ANDRES ENDERSON, Respondent, v. WILLIAM HILDEN-BRAND as Mayor, Christ Spitzer, Christ Schock, C. J. Eisenbeisz, Reinhold Schaber, John Schmidt, L. Walker, as Members of the City Council of the City of Ashley, McIntosh County, North Dakota, and the City of Ashley, McIntosh County, North Dakota, a Municipal Corporation, Appellants.

(204 N. W. 356.)

Constitutional law — statute pertaining to disconnecting farm lands from city held not to delegate legislative powers to city council, court or to persons petitioning to have land disconnected from city.

1. Chapter 172 of the Session Laws of 1923, relating to the disconnection of farm lands, prescribes affirmatively the conditions upon which owners of such lands may have the same disconnected from the city as a matter of right. In such case no power is vested in the city council or the courts other than to determine the existence of the facts set forth in the law itself, and does not delegate any legislative power to either the city council or the court. Nor does it delegate any power, either legislative or judicial, to the person who petitions the city council to have his land disconnected from the city, and it is therefore constitutional.

Appeal and error — litigant can question validity of statute only when and in so far as it applies to his disadvantage constitutional question not raised at trial cannot be raised on appeal.

2. A litigant can question the validity of a statute only when and insofar as it applies to his disadvantage and there is nothing in the record in this case showing any contract or obligation of any kind that has been, or might be, impaired and there is no evidence showing that the City of Ashley is indebted in any sum whatever, so that the constitutional question of the impairment of contracts can not be considered.

Statutes — statutes relating to disconnecting farm lands from city held general law of uniform operation throughout the state.

3. Said chapter 172 of said Session Laws of 1923 is a general law, of uniform operation throughout the state. It applies to all persons who own farm lands wholly within the incorporated limits of a city, and to all lands in the same class, which is reasonable and therefore constitutional.

Opinion filed May 2, 1925.

Appeal and Error, 4 C. J. § 608 p. 710 n. 73. Constitutional Law, 12 C. J. § 177 p. 760 n. 57, p. 762 n. 62; § 327 p. 843 n. 12 New; § 352 p. 857 n. 75; § 357 p. 860 n. 21; § 482 p. 955 n. 36. Statutes, 36 Cyc. p. 987 n. 73; p. 1001 n. 24.

Note.—Raising of constitutional question for first time on appeal, see 6 R. C. L. 96; 4 R. C. L. Supp. 380.

Appeal from the District Court of McIntosh County, *Wolfe, J.* ': ' Affirmed.

*Franz Shubeck,* for appellants.

It is a fundamental rule that a state cannot by an act of its legislature alter the nature and effect of an existing contract to the prejudice of either party nor give such contract a judicial construction, binding on the parties or the courts. 6 R. C. L. § 317, p. 327.

The assurance held out by the State to purchasers at tax sales by the revenue laws of 1890, as amended in 1891 with the tax sale certificates and tax deeds issued to them would be prima facie evidence of the regularity of the tax proceedings although relating to the remedy constituted a substantial inducement to the purchaser entering into the contract with the state and so materially affecting its value, that cannot be taken away by consequent legislation without impairing its obligation. Blakemore v. Cooper, 15 N. D. 5, 4 L.R.A.(N.S.) 1074.

A municipality may lawfully make contracts under which rights are acquired or liabilities incurred and the legislature cannot legally pass any statute impairing rights thus acquired, either by a municipal corporation or by persons dealing with it provided of course that the contract was one which the municipality was authorized to make. 6 R. C. L. § 377, p. 345.

The law is well settled that the classification of objects or places, for the purpose of legislation must be natural, not artificial. Re Connolly, 17 N. D. 550.

The classification of legislation should be based upon some operation under reason suggested by necessity. Edmunds v. Herbranson, 2 N. D. 270; Cobb v. Bard, 42 N. W. 396; State v. Harre, 42 N. J. L. 429; Louisville R. Co. v. Wallace, 11 L.R.A. 787.

The true test of unlawful statutory discrimination is whether all who are similarly situated are similarly treated and whether those who are similarly situated are hindered or prevented in their competition with others. Gunn v. R. Co. 34 N. D. 418.

It is impossible to sustain a delegation of any sovereign power of government to private citizens or to justify their assumptions of it. People ex rel. Shumway v. Bennett, 29 Mich. 451, 18 Am. Rep. 107.

*H. P. Remington* and *A. A. Ludwigs,* for respondent.

All constitutional inhibitions against the taking of private property

without due process of law and all constitutional guarantees of acquired rights and privileges are for the benefit of those persons only whose rights are affected and can be taken advantage of by no other persons.   8 Cyc. 788.

Before a law can be attacked by any person on the ground that it is unconstitutional, he must show that he has an interest in the question in that the enforcement of the law would be an infringement on his rights.   6 R. C. L. 89.

Only those whose rights would be prejudiced by enforcement of an unconstitutional act can be heard to question its validity.   Red River Nat. Bank v. Craig, 181 U. S. 548, 45 L. ed. 994; Clark v. Kansas City, 167 U. S. 118, 44 L. ed. 39.

That legislators have the power to define and to modify by proper general legislation the scope and the activities and to regulate the force of municipal corporations is we think fundamental.   Albany County v. Laramie County, 92 U. S. 307, 23 L. ed. 553; 19 R. C. L. 732, 1 Dill., Mun. Corp. § 64; Clark v. Kansas City, 167 U. S. 118, 44 L. ed. 39.

BURKE, J.   Andres Enderson, the plaintiff, as owner of 155 acres of farm land within the town site of Ashley, in the county of McIntosh and the State of North Dakota, filed his petition with the city council of the said city of Ashley, under chapter 172 of the Session Laws of North Dakota for the year 1923.   It is conceded that the petition is in due form and contains all the allegations necessary under the said session laws.   It is further conceded that the notice required by said law was duly published and that a hearing was had before the said council as provided by law.   There was also filed a remonstrance signed by many residents of the city, protesting against the withdrawal of said lands from the city and setting forth reasons why it should not be withdrawn.   At the hearing before the city council on said petition the evidence showed that plaintiff's land was used exclusively for farming and for the pasturing of stock; that it was bordering upon and within the limits of the incorporated city of Ashley; was wholly unplatted; had no municipal sewers, water mains, pavements, sidewalks or other city improvements.   Also evidence was taken on the part of the city showing the expenditure of large sums of

money for building, grading and maintaining streets and highways bordering on said land and by lighting said streets and installing and maintaining culverts and a surface sewerage adjoining said land; that the land to the south of the western half of the incorporated limits of the city of Ashley is a lake and the land immediately to the west of the incorporated limits of the city of Ashley is undeeded, and that the northern part of the west half of the incorporated limits of the city of Ashley is largely a low draw and marsh and wholly unsuited and unfit for building purposes; that the city of Ashley is the county-seat of McIntosh county, a prosperous, growing city and that the lands sought to be excluded are necessary for city lots and for its future growth; that the said land is now more valuable for city lots and other municipal uses than for grazing or agricultural purposes. The board found as conclusions that said lands, sought to be disconnected and excluded from the limits of the said city of Ashley is approximately one-quarter of the area of the city limits of said city and is desirable for city lots, necessary for the growth of the city and should not be excluded from the limits of the said city of Ashley, which findings and conclusions were signed by all of the members of the city board and the petition was denied.

On the denial of the petition the plaintiff applied to the judge of the district court for a writ of certiorari to review the action of the city council in denying the plaintiff's petition. There was some question as to whether the findings of fact of the city council were in fact the actual findings of the city council, and a motion was made on affidavit and notice to the judge of the district court, to have the same corrected and made to conform to the actual findings and conclusions of the city council, which motion was denied.

According to our view of the case the findings and conclusions of the city commissioners, outside of the statutory requirements, are entirely immaterial and the court's denial of the motion to amend is in accordance with our view of the law on the subject.

All of chapter 172, of the Laws of 1923, which must be considered and construed in this action, is as follows:—

Sec. 3969. (Limits may be Restricted.) On petition, in writing signed by not less than three-fourths of the legal voters and by property owners of not less than three-fourths in value of the property in

any territory, within any incorporated city, town or village, and being upon the border and within the limits thereof, the city council of the city, or the board of trustees of the town or village, as the case may be, may disconnect and exclude such territory from such city, town or village; provided that the provisions of this section shall only apply to lands not laid out into city, town or village lots or blocks.

Provided, further, that when the property or lands described in such petition, bordering upon and within the limits of any such incorporated city, town or village, are wholly unplatted, and no municipal sewers, water mains, pavements, sidewalks or other city, town or village improvements have been made or constructed therein, except as hereinafter provided, and this is made to appear upon the hearing upon such petition by the city council, commission or board of trustees of the town or village, as the case may be, it shall be the duty of the city council, commission or board of trustees to disconnect and exclude such territory from the city, town or village. . . .

(Provided, further, that if any interested party is dissatisfied with the findings of fact upon which a decision is made, application may be made to a court having jurisdiction for a writ of certiorari and the review upon this writ shall extend only to the determination of whether the inferior court, tribunal, board or officer has regularly pursued the authority of such court, tribunal, board or officer, which shall include the determination of the sufficiency of the evidence to sustain the findings of fact and of law made in the course of the exercise of the authority of such inferior court, tribunal, board or officer and the correctness, as a matter of law, of the particular order, judgment or act inquired into.)

(Provided, further, that in cities having a population of three thousand and over according to the last Federal census the findings of fact and conclusions of the City Council or the City Commission shall be conclusive upon the courts.)

The first section quoted requires a petition in writing, signed by not less than three-fourths of the legal voters and property owners of not less than three-fourths in value of the property in any territory within any incorporated city, town or village, and being upon the border and within the limits thereof, the city council or the board of trustees of

the town or village, as the case may be, may disconnect and exclude such territory, providing that the provisions of this section shall only apply to lands not laid out into city, town or village lots or blocks. If all of the foregoing conditions are in the petition and proven at the hearing, and if it further appears that the provisions of the next section are also in the petition, that the lands described are bordering upon and within the limits of any such incorporated city, town or village, are wholly unplatted and no municipal sewers, water mains, pavements, sidewalks or other city, town or village improvements have been made, or constructed therein except as hereinafter provided, and this is made to appear upon the hearing upon such petition by the city council, commission, or board of trustees of the town or village, as the case may be, it shall be the duty of the city council, commission or board of trustees to disconnect and exclude such territory from the city, town or village. If all of these facts appear in the petition and in the evidence, the city commission *has no discretion* whatever in the matter. It is its duty to grant the petition and disconnect the unplatted farm lands from the city. If this law is valid the district court was right in denying the motion to correct the findings and to include in the record a lot of matter that was wholly immaterial under the statute.

In the case of State ex rel. Claver v. Broute, 50 N. D. 753, 197 N. W. 871, and in the case of Baker v. Lenhart, 50 N. D. 30, 195 N. W. 16, this court held that certiorari did not lie to compel a city council to detach territory from the corporation under chapter 32 of the Session Laws of 1921. After such decisions the legislative assembly enacted chapter 172 which specifically provides that if any interested party is dissatisfied with the findings of fact upon which a decision is made, application may be made to a court having jurisdiction for a writ of certiorari, and the review upon this writ shall extend only to the determination of whether the inferior court, tribunal, board or officer regularly pursued the authority of such court, tribunal, board or officer, to which shall include the determination of the sufficiency of the evidence to sustain the findings of fact and of law made in the courts, of the exercise of the authority of such inferior court, tribunal, board or officer, and the correctness, as a matter of law, of the particular order, judgment or act inquired into.

The legislature, in this section, has given to the court issuing the certiorari no discretion. It can pass only upon the regularity of the proceedings of the city council, and the city council can pass only upon those questions which the legislature has named in the act, so that the order denying the defendant's motion was entirely proper.

After the denial of the motion, and after hearing before the judge of the district court on certiorari, he made his findings of fact and conclusions of law in favor of the plaintiff and ordered the city council to disconnect said land, and defendant appeals to this court.

Since the record shows that everything required under chapter 172 has been done by the plaintiff, the decision of the district court on certiorari is valid unless chapter 172 is unconstitutional, as claimed by the defendant. Defendant claims that the law is unconstitutional on the ground that it impairs the obligations of contracts. There is nothing in the record to show any contract or obligation of any kind that has been or might be impaired and there is no evidence showing that the city of Ashley is indebted in any sum whatever. Besides a litigant can question the validity of a statute only when and in so far as it applies to his disadvantage. State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292. Defendant also contends that said act is special and class legislation. Section 130 of the Constitution provides that the Legislature shall provide by general law for the organization of municipal corporations. Chapter 172 of the Laws of 1923 is a general law. Any person owning farm property, unplatted, and with no city improvements, can petition the city council of any city in which his property may be wholly within. It has a uniform operation throughout the state for that certain class, and if the class is reasonable it is constitutional. Edmonds v. Herbrandson, 2 N. D. 270, 14 L.R.A. 725, 50 N. W. 970. There can be no question of this class being reasonable. It includes any farm lands owned by any person.

In the case of Hunter v. Tracy, 104 Minn. 378, 116 N. W. 922, a similar but more unreasonable statute is construed, and Chief Justice Start in his opinion says:—"Again it is urged that this statute is unconstitutional because it arbitrarily creates a class of landowners, that is, those who own 40 acres or more of land, within the corporate limits of the cities named therein, occupied and used exclusively for agricultural purposes, and gives to them the benefits of the act and excludes

therefrom all other landowners.   The legislature cannot adopt a more arbitrary classification, for any classification for the purposes of legislation must rest upon 'such a difference in the situation and circumstances of the persons or subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them.' Nichols v. Walter, 37 Minn. 264, 33 N. W. 800; State ex rel. Board of Education v. Brown, 97 Minn. 402, 5 L.R.A.(N.S.) 327, 106 N. W. 477.   Courts, however, cannot review legislative discretion and declare a given classification arbitrary simply because they differ with the legislature as to the propriety of the classification and the sufficiency of the reasons upon which it is based; for the law-making power is vested in the legislature.   It must not be lightly assumed that legislators are less wise, or less mindful of the mandates of the Constitution, than judges are.   Therefore, it is only in cases where it is manifest upon the face of a statute that a classification therein is based upon no reason, but is purely an arbitrary *act* that courts may and must, for that reason, declare unconstitutional.   State ex rel. Douglas v. Westfall, 85 Minn. 437, 57 L.R.A. 297, 89 Am. St. Rep. 571, 89 N. W. 175; State ex rel. Board of Education v. Brown, supra."

There is no limit to the amount of land under our statute and there is no discrimination.   It is as fair and reasonable as a class can be made.

Defendant insists that it is a delegation of legislative power to individuals and he relies on the case of Morton v. Holes, 17 N. D. 154, 115 N. W. 256.   The statute construed in this case was held unconstitutional for the reason that it constitutes an unlawful delegation of legislative power.   The court said:—"It is of course well settled that the functions of deciding matters relative to the public improvements such as are contemplated by the act in question are legislative in their character.   And it is equally well settled that the legislature, to whom is delegated by the people all the legislative power of the state may, in local matters of an administrative character, delegate such legislative functions to local authorities and boards, but it is equally well settled that such power can not be delegated to private individuals or to any class of citizens in their individual capacity."   "The petitioners are expressly given the right to specify the kind, character and extent of the improvements desired, specifying the width and the material of

paving, if any, the size and nature of any lateral sewers or water mains, the number and location of manholes and catch basins, the number and location of fire hydrants, etc., and section six of the act expressly makes it the duty of the board, upon the filing of such petition to construct the improvements prayed for. The board has no discretionary powers in the matter and is made the mere instrument of the law to carry out the will of such favored individuals, and hence the law is unconstitutional and void." It is very clear that the legislature left all of these matters to be decided by the people who petition the city commissioners, leaving nothing for the city commissioners to do, but the statute now under consideration is entirely different. The legislature has passed all of the law and has delegated no legislative power to anyone.

It is the contention of the defendant that chapter 172 of the Laws of 1923 grants to the petitioner legislative functions and defendant argues with great ability and force that, "the city of Ashley, under the terms and provisions of chapter 172, is compelled to obey Mr. Enderson, the petitioner. Mr. Enderson has the privilege of remaining in the city, if he wishes, but if he decides, as he has done, that it will be cheaper for him to have his land disconnected from the city, he can compel the city of Ashley to do just as he says. Instead of obeying legislative mandate imposed by law, the city council is now compelled to obey Mr. Enderson. The council is only the instrumentality or agency through which Mr. Enderson can compel the exclusion of his land." The law is well settled that the legislature cannot delegate legislative power to private citizens, but, has it done so? This is an entirely different act from that construed in the case of Morton v. Holes, supra. What can Mr. Enderson do under this act? He can petition the city council for a hearing, setting forth the grounds for disconnection enumerated in the statute. The difference between the law in this case and the law construed in the case of Morton v. Holes, supra, is that in the latter case the petitioner could specify the improvements to be made, the kind and character and extent, the width and material to be used, the size and material of sewers or water mains, the number and location of manholes and catch basins for such sewers, and the number and location of fire hydrants for such water mains. This was all left to the petitioner by the legislature, but in the case at bar the legislature

specifically named what the petition shall contain, and if upon the hearing it appears that all the facts required by the legislature are in evidence, it is made the duty of the city council to disconnect such lands from the city. The distinction between the two laws is very clearly explained in the case of Hunter v. Tracy, 104 Minn. 378, 116 N. W. 922, and in Brenke v. Belle Plaine, 105 Minn. 84, 117 N. W. 157, the latter case being similar to the statute in the case of Morton v. Holes, supra, and the former similar to the law in the case at bar. In the case of Hunter v. Tracy the court said: "In a doubtful case the history of the statute is significant. By reading and construing all of the provisions of this statute together it is reasonably clear that the court is without discretion to refuse the decree if all the essential facts and conditions to support the decree are proven and found. This case, then, falls within the rule that whenever public interest or individual rights call for the exercise of a power given to courts or other public officers, the language used in conferring the power, although permissive in form, is, in effect, mandatory. The legislature, by this statute, solved for itself the legislative question as to the propriety of detaching lands in any shape from the territorial limits of a city, and declared upon what facts and conditions it should be done, and conferred upon the courts the judicial duty of ascertaining, in each particular case, the existence of the necessary facts and conditions. Such a statute is constitutional. State ex rel. Railroad & W. Commission v. Chicago, M. & St. P. R. Co. 38 Minn. 281, 37 N. W. 782; State v. Great Northern R. Co. 100 Minn. 445, 10 L.R.A. (N.S.) 250, 111 N. W. 289." The language used in the Minnesota statute, while permissive, was held to be mandatory. The statute under consideration in the case at bar is not permissive. It specifically says that it is the duty of the city council to disconnect the land on proof of the statutory requirements. The case of Brenke v. Belle Plaine, supra, was under a different statute before the Supreme Court of Minnesota and the court says, referring to the law:—"It provides for the detachment of agricultural lands from villages in certain cases, prescribes a course of procedure, and that after hearing and trial in any particular case in which the relief is demanded *the court may 'in its discretion' grant or refuse the same.* That this is a delegation of legislative power and discretion to the court is quite clear. The organization of municipalities, including the

extent of territory to be embraced within their limits, is exclusively legislative and can not be referred for a determination to the courts;" And then it continues:—"Had the act defined the conditions upon which land might be detached, directing the court, upon finding the necessary facts, to grant the relief, a different situation would be presented. The act under consideration does not so provide, but commits the whole matter to the sound judgment of the district court. The act in this respect is entirely different from that of 1907, construed in the Hunter Case, for there no discretionary power was conferred upon the court. That statute was construed as mandatory, and as requiring the court, upon finding the facts made the basis of the right of separation, to grant a decree."

Another case relied upon by the defendant and quoted in the case of Morton v. Holes, 17 N. D. 154, 115 N. W. 256, is the case of Hutchinson v. Leimbach, 68 Kan. 37, 63 L.R.A. 630, 104 Am. St. Rep. 384, 74 Pac. 598. This case is in entire harmony with the case of Brenke v. Belle Plaine, supra. The statute construed in the Kansas case provides that upon the presentation of such petition the court shall hear such testimony as is produced before it, and such other testimony as it may wish to hear, "and if upon hearing of such testimony the court is satisfied that the notice has been given by this act, *and that no public or private right will be injured or endangered, it shall order such street, alley or other public reservation or any portion or portions thereof,* describing the same, to be vacated, or such corporate boundaries to be changed by the exclusion of such lands therefrom, by an order entered upon the journal of such proceedings." Here the court is given discretion and may grant or refuse the petition and any party to any proceeding shall have the right to have any matter of fact in controversy in said proceeding submitted to the determination of the jury, and if after trial certain facts exist, and if, in the opinion of the court, *"no public or private right will be injured or endangered,* it shall order such street, alley or other public reservation disconnected." The court in this case also says:—"*If the statute had prescribed affirmative conditions upon which owners might have their lands disconnected from the city as a matter of right, the existence of the conditions to be passed upon by the court, a very different question would be presented. For instance, if its provisions were that any unplatted farm land lying in*

*a city should be excluded from the corporate boundaries on petition of the owner whenever its character as such should be shown in appropriate proceedings in the district court, it might be considered that the legislature had itself determined that such land ought not to be included within the limits of a city because of its character, and so, in effect, made its retention unlawful, and afforded means by which the owner might procure an authoritative declaration to that effect."* This is what the legislature has done in the law in the case at bar.

Defendant relies also upon the case of Wyandotte County v. Abbott, 52 Kan. 148, 34 Pac. 416. The law there construed has the same fatal defect as found in Hutchinson v. Leimback, and Morton v. Holes, supra. The court says:—"Where an important power, namely, that of causing public improvements and of levying general taxes on all of the people, in addition to special assessments on a portion of them, to pay for such improvements, not conferred directly upon the class of persons, many of whom may not be electors, the petitioners are authorized absolutely and arbitrarily to fix the boundaries of a taxing district, the nature, extent, and cost of the improvements to be made, 'and no officer or tribunal of the people has any discretion in this respect." Practically the same law as that construed and held unconstitutional in the case of Morton v. Holes, supra, but no authority whatever in the case at bar.

The apparent conflict in the decisions arises over the difference in statutes just as shown in the two statutes in Minnesota, but the law is well settled that, if the legislature passes an act enumerating reasons for the disconnection of farm lands from a city, 'and leaves no discretion in the city council, the courts, or private individuals, the law is constitutional.

In a late case, Lyon v. Payette, 38 Idaho, 705, 244 Pac. 793, the court says:—"It is generally conceded that while the legislature can not delegate the power conferred upon it by the constitution to legislate, the legislature can pass a law to become effective at some future time upon the determination of facts set forth in the law, and the legislature may delegate to the courts the power to determine the existence of the conditions prescribed in the law upon which it will become effective, and if, in the enactment the legislature vest no power in the courts other than to determine the existence of the facts set forth in the

law itself, contingent upon the existence of which the law comes into operation, it does not constitute a delegation of legislative power." Citing Re Fullmer, 33 Utah, 43, 92 Pac. 768; Edgewater v. Liebhardt, 32 Colo. 307, 76 Pac. 366; Hutchinson v. Leimbach, 68 Kan. 37, 63 L.R.A. 630, 104 Am. St. Rep. 384, 74 Pac. 598; Young v. Salt Lake City, 24 Utah, 321, 67 Pac. 1066; Winfield v. Lynn, 60 Kan. 859, 57 Pac. 549; Callen v. Junction City, 43 Kan. 627, 7 L.R.A. 736, 23 Pac. 652; Winkler v. Hastings, 85 Neb. 212, 122 N. W. 858; Brenke v. Belle Plaine, 105 Minn. 84, 117 N. W. 157; Hunter v. Tracy, 104 Minn. 378, 116 N. W. 922; Glaspell v. Jamestown, 11 N. D. 86, 88 N. W. 1023; Pelletier v. Ashton, 12 S. D. 366, 81 N. W. 735; Boone County v. Verona, 190 Ky. 430, 227 S. W. 804; Fairview v. Giffee, 73 Ohio St. 183, 76 N. E. 865; Galesburg v. Hawkinson, 75 Ill. 152; Burlington v. Leebrick, 43 Iowa, 252; 12 C. J. 856, § 352. *"But where the legislature has authorized the court 'in its discretion' or if the court is of the opinion that the prayer of the petition should be granted (and similar expressions), to grant or deny the relief,* some courts hold that such legislative acts constitute an attempted delegation of a legislative power." Continuing, the court quotes from the law and says:—"It requires the court to grant the prayer of the petition where the following conditions or facts exist: (1) that the tract is at least five acres in extent; (2) that the lands sought to be detached are used exclusively for agricultural purposes; (3) that such tract does not receive sufficient special benefits to justify its retention within the municipality; and (4) that 'by detachment of said lands the symmetry of the municipality would not be materially marred.' It is thus seen that there are four facts or conditions which the court must find to exist in order for the statute to apply, and if found to exist the judge of such court shall grant the prayer of said petition. This provision would appear to be mandatory. Edgewater v. Leibhardt, 32 Colo. 307, 76 Pac. 366. The statute does not vest the court with any discretion in the matter other than to decide whether the four facts or conditions exist. If the court find that such facts exist, the law makes it the court's duty to render judgment detaching the lands, irrespective of what may be the court's views as to the public policy or the justice of the action required by law. The discretion of the court is restricted to a finding as to the existence of the facts. But once the required

52 N. D.—35.

facts are found to exist, the court has no further discretion to exercise but must render judgment detaching the lands from the limits of the municipality." This case is much nearer the border-line than the case at bar for the third requirement is that "such tract does not receive sufficient special benefits to justify its retention within the municipality, and (4) that by the detachment of said lands the symmetry of the municipality would not be materially marred." There are two questions which it would seem as though there might be some discretion on the part of the court but it is held constitutional.

In the case of Edgewater v. Leibhardt, supra, the court says:—"In the brief of counsel it is taken for granted that the County Court is, under the statute, vested with discretionary power as though the power contained the words found sometimes in similar statutes directing the court to grant the petition after hearing. '*if justice and equity require that such territory should be disconnected*' but no such provision is contained in the statute and the words 'determine' and 'should' found therein do not authorize the court to do as it pleases. The statute is, in our opinion, mandatory, and if upon the trial it appears that the conditions required to be established by the statute have been established, it becomes the duty of the court to enter a decree disconnecting the territory from the city or town."

In the case of Glaspell v. Jamestown, 11 N. D. 86, 88 N. W. 1023, Justice Morgan specifically enumerates and distinguishes between judicial and legislative power as follows:—"If a decision of the matter prayed for in the petition involve decisions of questions of fact only, then the power conferred upon the court would be judicial. The facts to be found relate to the character of the land, its location, occupancy, ownership, benefits accruing by being within the corporate limits, burdens upon it by reason of city taxation, the presentation of a petition to the city council, the refusal of the city to grant it, publication and service of notice, and whether the proceedings were in all things legal, passing upon these questions and making findings of fact thereon would involve the exercise of judicial power. Having made such findings the duty of the court as prescribed by the law is not fully performed in relation to the matter. The court must proceed further and determine whether the petition should be granted and can be granted without injustice to the interested parties. It is apparent that such

a determination goes further than the mere finding of a fact. It involves the reaching of a conclusion from the facts found as to the policy of restricting the corporate limits of the city. Not only the policy for the present but for the future. It determines the limits of the city, the jurisdictional limits of its courts, and taxation powers; the effect upon its schools and people; and, in short, determines the same questions of public policy involved always in the exercise of legislative duties or powers." The legislature must have had this case in mind when the statute under consideration was drawn, for the city council and the court is clearly shorn of all authority to pass upon any question except those questions mentioned in the case of Glaspell v. Jamestown as judicial.

The contention of the defendant that the legislature delegated to the petitioner legislative power is without merit. The only thing delegated to the petitioner is the right to petition.

The law preserves to the owner of the lands sought to be disconnected the sacred right of petition only. He must name in his petition those grounds which the law says are necessary to disconnect his land from the city and he must prove them at the hearing. He does not pass upon the question as to whether his petition shall be granted and he has no power to legislate or name the conditions upon which his land can be disconnected. He has the bare right to bring the matter before the city council and if his petition is denied he has the right to take it, on certiorari, into the courts.

What is a petition? The Century Dictionary and Encyclopedia says:—"An entreaty; a supplication or prayer; a solemn or formal supplication, as one addressed to the Supreme Being or to a superior rank, or to a superior power; a request, or supplication from an inferior to a superior, or to a legislative or other body soliciting some favor, right, grant, or mercy."

Section 10 of the Bill of Rights in the Constitution of the State of North Dakota provides:—

"The citizens have a right, in a peaceable manner, to assemble together for the common good, and to apply to those invested with the powers of government for the redress of grievances, or for other proper purposes by petition, address or remonstrance."

Since the right to petition is preserved in the Constitution, the legislature has authority to extend it to the owner of the land.

The Constitution of the different states, as a rule, limits legislation to the passage of general laws in relation to municipal corporations. The legislature could not pass a law excluding Enderson's land from the city of Ashley, for that would be a special law, but it could, and did, pass a general law which has a uniform operation throughout the state and has provided that the law shall be made operative by the city council on the petition of the owner of the land with the privilege of applying to the court to have the action of the city council reviewed on certiorari. So far as our research goes, every state which has passed laws on the subject has provided that the laws should be made operative by the city council or the courts on petition of the owners of the land.

In the case Guild v. Chicago, reported in 82 Ill. 472, the court said:—

"The fact that a law depends upon a future event or contingency for its taking effect, and that contingency may arise from the voluntary act of others, does not render it liable to the objection that it is a delegation of legislative authority to them upon whose acts the taking effect of the law depends."

See Edgewater v. Liebhardt, 32 Colo. 307, 76 Pac. 366.

In the case of Fairview v. Giffee, 73 Ohio St. 183, 76 N. E. 865, the court quotes from the case of Moers v. Reading, 21 Pa. 202, as follows:—

"Half of the statutes on our books are in the alternative, depending upon the discretion of some person or persons to whom is confided the duty of determining whether the proper occasion exists for executing them. But it cannot be said that the exercise of such a discretion is the making of the law."

This distinction has been very clearly laid down by Ranney, J., in the leading case of Cincinnati, W. & Z. R. Co. v. Clinton County, 1 Ohio St. 87, 88, as follows: "But while this is so plain as to be admitted, we think it is equally undeniable that the complete exercise of legislative power by the General Assembly does not necessarily require the act to so apply its provisions to the subject matter, as to compel their employment without the intervening assent of other persons, or

to prevent their taking effect, only upon the performance of conditions expressed in the law. . . . But because such discretion is given are these, and all similar enactments, to be deemed imperfect and nugatory? It would take a bold man to affirm it. In what does this discretion consist? Certainly not in fixing the terms and conditions upon which the act may be performed, or the obligations thereupon attaching. These are all irrevocably prescribed by the legislature, and whenever called into operation, conclusively govern every step taken. The law is therefore perfect, final, and decisive in all its parts, and the discretion given only relates to its execution. It may be employed or not employed—if employed, it rules throughout; if not employed it still remains the law, ready to be applied whenever the preliminary condition is performed. The true distinction, therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." The doctrine contended for above has been approved and applied in Zanesville v. Zanesville Teleg. & Teleph. Co. 64 Ohio St. 67, 52 L.R.A. 150, 83 Am. St. Rep. 725, 59 N. E. 781; Dowling v. Lancashire Ins. Co. 92 Wis. 63, 31 L.R.A. 112, 65 N. W. 738; Marshall Field & Co. v. Clark, 143 U. S. 650, 36 L. ed. 294, 12 Sup. Ct. Rep. 495; People v. Long Island R. Co. 134 N. Y. 506, 31 N. E. 873; and in many other cases which might be cited. See note 2, 8 Cyc. 835.

See also the case of Young v. Salt Lake City, 24 Utah, 321, 67 Pac. 1066, and Re Fullmer, 33 Utah, 43, 92 Pac. 768, which follow the same line of reasoning.

In the case of Coughran v. Huron, 17 S. D. 271, 96 N. W. 92, it is held that where it affirmatively appears from the petition that there was no person residing on the property sought to be excluded, and the petition was signed by the sole owner thereof, the statute was complied with.

The petitioner is not invested with any legislative or judicial powers. He comes as a suppliant to the city council to invoke the judicial power, which the legislature has conferred upon it, to act on his petition. It is the method usually provided by the legislative assembly for the application of a general law to a private right. As Judge

Brewer said, in the case of Phœnix Ins. Co. v. Welch, 29 Kan. 673:—
"Now, in this section is absolutely and finally prescribed the rule and measure of license. It is not left to the state superintendent to determine what the rule shall be. His duty is simply to ascertain the facts and apply the rule. He may not arbitrarily determine upon what conditions the plaintiff may enter this state; he can only enforce the conditions which the legislature has imposed. It is true the extent of those conditions may vary in different cases, but the rule to determine the variance is not left to his judgment, but is prescribed by the legislature. Our laws abound in cases in which a statute is made dependent upon the action of some tribunal or body, or upon some other contingency, and is therefore practically dormant until such action takes place or contingency happens. The laws authorizing municipalities to issue bonds are instances. . . . Of a similar nature are the hedge bounty laws, the herd laws, many of the statutes for the regulation of municipal governments, and others which might be named."

So, in the case at bar, the law is dormant until the person entitled to the benefits of the law files his petition. It is not true, as appellant claims that he is the one to decide whether his lands shall be excluded from the city. That has already been decided by the legislature and it is the duty of the city council to grant the petition and disconnect the land from the city when those reasons enumerated in the statute are proven.

It follows that the order of the district court requiring the city council of the city of Ashley to disconnect plaintiff's land from the city is valid and the decision of the lower court is affirmed with instructions to disconnect the plaintiff's land from the city.

BIRDZELL, NUESSLE, and JOHNSON, JJ., concur.

CHRISTIANSON, Ch. J. (concurring). I concur in the opinion prepared by Mr. Justice Burke. I think it entirely clear that the statute under consideration is not vulnerable either on the ground that there is an unwarranted delegation of power to the city council (or commission), or a delegation of legislative power to the courts. The legislature has prescribed certain general, definite rules applicable in all cases as to what territory is to be excluded from cities; and authorized

the city council (or commission) to ascertain and determine in each case whether it does or does not fall within the rule established by the legislature. This does not constitute a delegation of legislative powers in contravention of the constitutional inhibition. 6 R. C. L. pp. 175, 176. For it is competent for the legislature to pass a law, the ultimate operation of which may, by its own terms, be made to depend on a contingency. People ex rel. Grinnell v. Hoffman, 116 Ill. 587, 56 Am. Rep. 793, 5 N. E. 596, 8 N. E. 788. "The true distinction . . . is this: The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes or intends to make, its own action depend." Locke's Appeal, 72 Pa. 491, 13 Am. Rep. 716. Under the law in question here a city council (or commission) is given power only to ascertain whether certain facts do or do not exist. It is given no power to determine any question of legislative policy; nor are the courts given any such power. The only power given to the courts is to review the findings of the city council, or commission, for the purpose of determining whether the city council or commission regularly pursued its authority and whether the evidence is sufficient to sustain its finding. Laws 1923, chap. 172. The review so afforded does not involve the exercise of legislative, but the exercise of judicial, powers.

The only question involved in this case which has caused me difficulty is whether the law does, in effect, delegate legislative power to a private individual or individuals. Under the provisions of the law territory can be detached from a city only upon a petition in writing, signed "by not less than three-fourths of the legal voters and by property owners of not less than three-fourths in value of the property" sought to be detached. Hence, it is said that in every such case, that is, in every case where certain territory indisputably falls within the rule prescribed by the statute, it is, in effect, the petitioners, or those who are qualified to petition, who determine whether the territory shall or shall not be detached. And, in a case like the one at bar, where there is only one owner, the property can be detached only in case he petitions for its exclusion. In such case, that is where the undisputed facts are such as to bring the property within the operation of the law, it is really the owner who determines whether the particular tract shall or shall not be detached from the city. If he deems it for his own best

interest to have it remain within the city he may refrain from presenting a petition for detachment, and the territory will continue to remain a part of the city.    On the other hand, if he deems it for his best interest to have it detached, he may present a petition for its detachment, and the city council (or commission) will be in duty bound to order its detachment; it will have no discretion in the matter at all, and if it refuses to grant the petition and order the exclusion of the territory the owner may invoke the judicial review afforded by the law, and have the decision of the city council set aside, and the territory excluded. And appellant contends that the result of the operation of the law in such case is that it is really the owner of the land who determines the policy of exclusion, that is, he determines whether he will cause the property to be excluded from, or whether he will permit it to remain within, the city.    There is, I think, considerable force in this contention.    But, of course, in statutes of this kind there must be some provision for applying, or invoking, the law in each particular case.    And after a careful consideration of the matter, I am not prepared to say that the legislature was inhibited from prescribing the conditions for the application of the law which it did in this statute.    Whatever doubt I have on the subject must be resolved in favor of the law.    For, merely to doubt the constitutionality of a law, is to sustain it.    6 R. C. L. pp. 97, 98; State v. First State Bank, ante, 231, 202 N. W. 391.    While I have found no case where the precise question involved here has been considered, it appears that similar, or analogous, statutes have been enacted by the lawmakers, and enforced by the courts of other states.    See 1 McQuillin, Mun. Corp. pp. 326, 327; Young v. Carey, 184 Ill. 613, 56 N. E. 960; 1 Dill. Mun. Corp. 5th ed. p. 623, note 2.