BILLINGS SCHOOL DISTRICT, a Municipal Corporation, Appellant, and Storlie School District, a Municipal Corporation, Intervener and Appellant, v. LOMA SPECIAL SCHOOL DISTRICT, a Municipal Corporation, et al., Respondents.

(219 N. W. 336.)

**Municipal corporations — regularity of organization cannot be attacked collaterally.**

1. The regularity of the incorporation of a village cannot be attacked collaterally.

**Schools and school districts — suit to enjoin levying or assessing taxes is a collateral attack.**

2. Section 1243, Comp. Laws 1913 provides that an incorporated village may be organized as a special school district. In the instant case the village of Loma was organized as a special school district. The village contained portions of three common school districts. One of the school districts affected by the organization of the special school district brought an action to enjoin the special school district, the members of the board of education thereof, the county superintendent of schools, the county treasurer and the county auditor, from levying or assessing taxes in the territory detached from such plaintiff school district or from in any manner treating such territory as a part of said Loma special school district. In such action the plaintiff contends that the incorporation of the village of Loma was irregular; that certain territory was included in the village which was not urban in character. It is held that this is a collateral attack upon the incorporation of the village and that such objection is not available to the plaintiff in the injunctional action.

**Municipal corporations — mistake in declaring result of election for incorporation does not invalidate incorporation of village.**

3. Where all proceedings required by §§ 3840–3848, Comp. Laws 1913, for the incorporation of a village have been had, the territory described in the petition (§ 3843) and in the order of incorporation (§ 3844) becomes incorporated as a village, if a majority of the votes cast at the election, held for the purpose of determining whether such property shall be incorporated as a village, are in favor of such incorporation; and the incorporation is not rendered invalid because the board of county commissioners, in the order declaring the result of the election and the incorporation of the village (§ 3848), through inadvertence, misdescribed the territory included in the village. In canvassing the returns of such election, the board of county commissioners has no power to alter the boundaries of the village.

**Schools and school districts — when certain village may be organized as a special school district.**

    4. For reasons stated in the opinion, it is held that an incorporated village which is part of three common school districts may be organized as a special school district, under § 1243, Comp. Laws 1913.

Opinion filed May 7, 1928.

  Municipal Corporations, 43 C. J. § 52 p. 99 n. 94; p. 100 n. 98; § 94 p. 131 n. 85. Schools and School Districts, 35 Cyc. p. 846 n. 67; p. 848 n. 89.

    From a judgment of the District Court of Cavalier County, *Burr*, J. plaintiff and intervener appeal.

    Affirmed.

    *George M. Price* and *John J. Nilles,* for appellants.

    "The incorporation of a town will be held valid although a reasonable amount of land not in actual occupation be included; but if the excess be such as, in effect, to evidence an attempted fraud upon the law, and territory be embraced that cannot be fairly termed a part of the town it will be annulled." McClesky v. State, 4 Tex. Civ. App. 322, 23 S. W. 518.

    "A town population is distinguished from a rural population, which is understood to signify a people scattered over the country, and engaged in agricultural pursuits, requiring a considerable area of territory for support. The section of the country so inhabited cannot be called a town, without doing violence to the meaning ordinarily attached to that word." State v. Eidson, 7 L.R.A. 733.

    "The legislature cannot arbitrarily include within the limits of the village borough or city, property and persons not properly chargeable with its burdens and for the sole purpose of increasing the corporate revenues by the exaction of taxes." Cooley, Const. Lim. 504.

    "Where a town is made a part of a city by an unconstitutional act, a court of equity may restrain the city from exercising municipal jurisdiction over it, and interfering with its property in a manner calculated to inflict upon the community irreparable injury." Hyde Parke v. Chicago, 16 N. E. 222.

    "The property of the village is in the nature of a trust fund. It holds it for the use of the public, and any unlawful interference with it,

calculated, as this would be, to inflict upon the community an irreparable injury in respect to it presents a clear case for equitable relief." Ibid.

"Where the attempted incorporation is an absolute nullity it is subject to collateral attack." 43 C. J. 1090.

"Where the court or board conducting the incorporation proceedings acted without or in excess of jurisdiction its judgment is void and its validity may be attacked collaterally." State v. Bellflower, 129 Mo. App. 138, 108 S. W. 177.

*Grimson & Snowfield,* for respondents.

"The validity and regularity of the incorporation of a town are not open to attack in a collateral proceeding, but must be tested, if at all, by a direct proceeding in quo warranto." Dunn v. Burbank, 179 N. W. 969.

"The petition for incorporation setting forth the meets and bounds of the intended municipality may be regarded as a part of the order of incorporation if the latter refers to the former as its basis." 28 Cyc. 180.

"A special school district may include more territory than is included within the limits of such city, town or village, but cannot include less . . . , and in no event can the territory embraced within the special school district be less than the territory within the corporate limits of the city." Harrison School Dist. v. Minot, 48 N. D. 1189, 189 N. W. 338.

"The incorporation of a municipality under a general law may be proved by the record of the incorporation proceedings, together with evidence that the municipality has appropriate officers and has operated as an incorporated city or town. In the absence of the best evidence, secondary proof of incorporation may be admitted, and even where record evidence is obtainable, yet where for the purpose of the particular case it is only necessary to prove a de facto existence, parol evidence is permissible to make out a prima facie case." 43 C. J. 105.

CHRISTIANSON, J.   The controversy involved on his appeal grew out of the organization of Loma special school district in Cavalier county in this state.   Certain territory within the boundaries of the plaintiff Billings school district was included within the boundaries of Loma special school district, and Billings school district insti-

56 N. Dak.—48.

tuted this action to enjoin the defendant school district, the members of the board of education thereof, the county superintendent of schools, the county treasurer, and the county auditor of Cavalier county from levying or assessing taxes or exercising any control over, or carrying on any educational functions whatsoever in, said territory or in any manner treating the same as a part of the defendant Loma special school district. There was also included in Loma special school district certain territory formerly within Storlie school district; and Storlie school district asked for and was granted leave to intervene in the action. The plaintiff and the intervener assail the validity of the organization of Loma special school district, and assert that the territory sought to be included in such defendant school district, formerly within the boundaries of the plaintiff and intervener school districts, was never legally detached from such districts and has at no time become a part of the defendant school district.

The trial court rendered judgment in favor of the defendant sustaining the organization of Loma special school district and holding that the territory in dispute was a part of such district. The plaintiff and intervener have appealed from the judgment and demanded a trial anew in this court.

The questions presented involve a consideration of the following provisions of the Compiled Laws of North Dakota 1913, relating to the incorporation of villages and the organization of special school districts:

Section 3840: "Persons intending to make application for the incorporation of a village as hereinafter provided shall cause an accurate survey and map to be made of the territory intended to be embraced within the limits of such village; such survey shall be made by a practical surveyor, and show the courses and distances of the boundaries thereof, and the quantity of land contained therein, the accuracy of which survey and map shall be verified by the affidavit of such surveyor written thereon or annexed thereto."

Section 3841: "Such persons shall cause an accurate census to be taken of the resident population of such territory as it may be, on some day not more than sixty days previous to the time of presenting such application to the board of county commissioners, as hereinafter provided; which census shall exhibit the name of every head of a family residing within such territory on such day and the number of persons then be-

longing to such family; and it shall be verified by the affidavit of the person taking the same."

Section 3842: "Such survey, map and census when completed and verified as aforesaid shall be left at some convenient place within said territory for examination by those having an interest in such application, for a period of not less than thirty days."

Section 3843: "Such application shall be by petition subscribed by the applicants, and also by not less than one-third of the whole number of qualified voters residing within such territory; and such petition shall set forth the boundaries thereof, the quantity of land embraced according to the survey, and the resident population therein contained according to such census, and such petition shall have attached thereto or written thereupon affidavits verifying the facts alleged therein, and it shall be presented at the time indicated in the notice of such application or as soon thereafter as the board can receive and consider the same."

Section 3844: "The board of county commissioners on hearing such application shall first require proof either by affidavit or by oral examination of witnesses before them that the said survey, map and census were subject to examination in the manner and for the period required by § 3842; and if the board is satisfied that the requirements of this chapter have been fully complied with, it shall then make an order declaring that such territory shall with the assent of the qualified voters. thereof as hereinafter provided be an incorporated village by the name specified in the application aforesaid, which name shall be different from that of every other town in this state, and it shall also include in such order a notice for a meeting of the qualified voters resident in said proposed village at a convenient place therein to be by them named, on some day within one month therefrom, to determine whether such territory shall be an incorporated village."

Section 3845.  (Provides for the notice of election.)

Section 3846.  (Relates to the hours of voting.)

Section 3847.  (Provides for the appointment of election officials.)

Section 3848.  "The qualified voters of said proposed incorporated village shall vote by ballot, having thereon the words, 'for incorporation, yes,' or the words 'for incorporation, no;' . . . *if a majority of such ballots shall have thereon the word 'yes,' such territory shall from that time be deemed an incorporated village and shall thereafter, for all*

*purposes except the payment of any prior bonded indebtedness, be separate and disconnected from any civil township of which if theretofore formed a part and to have continuance thereafter by the name and style specified in the order made by the board of county commissioners as hereinbefore provided;* and the inspectors of such election shall make a statement showing the whole number of ballots cast at such election, the number having the word, 'yes' thereon, and the number having the word 'no' thereon, which statement shall be verified by the affidavit of such inspectors and shall be returned to the board of county commissioners at its next session which, if satisfied with the legality of such election, shall make an order declaring that said village has been incorporated by the name adopted, which order shall be conclusive of such incorporation in all suits by or against such corporation; and the existence of such corporation by the name and style aforesaid shall thereafter be judicially taken notice of in all courts in this state without specially pleading or alleging the same."

Section 1243: "When a petition signed by one-third of the voters of a city, incorporated or platted town or village, or a school district in which is located a city or incorporated or platted town or village entitled to vote at such election, is presented to the council, commission or board of trustees of such city, incorporated or platted town or village or school district, asking that such city, incorporated or platted town or village or school district be organized as a special school district, such council, commission or board of trustees shall within ten days order an election for such purpose, notice of which shall be given, and the election conducted and the returns made in the manner provided by law for the annual school election; and the voters of such city, incorporated town or village or school district shall vote for or against organization as a special school district at such election."

The facts out of which this controversy grew are substantially these: For a considerable number of years there has been located in Cavalier county in this state an unincorporated town or village by the name of Loma. It is situated on the M. St. P. & S. Ste. M. R. R. There is a railroad station, elevators, stores, and such other buildings as are generally found in a small town in this state. The platted portion consists in all of some three hundred lots, and in 1926 there were in all some one hundred twenty residents in the platted territory. An applica-

tion was duly made to the board of county commissioners of Cavalier county asking for the incorporation of certain territory described as sections 19 to 21, inclusive, and the S½ of sections 16, 17, 18, 22, 23, and 24 of township 160, range 61; and all of sections 2 to 6, inclusive, and the N½ of sections 7, 8, 9, 10 and 11 of township 159, range 61 and section 1 and the N½ of section 12, township 159, range 62, into a village to be known as the village of Loma. Such application was signed and verified as required by § 3843, supra, and accompanied by a map and survey and census, together with evidence that the survey, map and census had been left at some convenient place within the territory for examination by those having any interest in such application for a period of not less than thirty days. In short, there was presented to the board of county commissioners of Cavalier county, an application for the incorporation of the village of Loma showing full compliance with §§ 3840, 3841, 3842, 3843, supra. The application came on for hearing on June 5, 1926. At such hearing the plaintiff school district appeared by attorneys and objected to the granting of the application. After full hearing and due consideration of the application and proofs adduced, the board of county commissioners found that the requirements of the law had been fully complied with and entered the order prescribed by § 3844 declaring that certain territory, which was particularly described in the order (being the same as that described in the petition and in the map presented with the petition), shall, with the assent of the qualified voters of such territory, be an incorporated village by the name of Loma. In such order the county commissioners included a notice for a meeting of the qualified voters resident of such proposed village, at a convenient place therein named, on June 21, 1926 for the purpose of voting upon the question of incorporation. Notice of such election was duly posted and given and the election duly held and conducted, all as required by law. Fifty-eight votes were cast at such election; fifty-five in favor of incorporation and three against. The inspectors of the election made and filed their verified return or statement of the election as provided by law (§ 3848, supra) and also filed an order dividing the village into districts. (Comp. Laws 1913, § 3849.) Thereafter the plaintiff and certain individual residents in plaintiff school district instituted a proceeding in the district court of Cavalier county asking that a writ of prohibition be issued, prohibiting the

county commissioners of Cavalier county from entering an order (prescribed by § 3848, supra) declaring that the said village of Loma had been duly incorporated. The application for the writ of prohibition was heard on July 6, 1926 and resulted in a judgment against the petitioners in the proceeding. No appeal was taken from such judgment. On July 12, 1926, the county commissioners of Cavalier county entered an order, as prescribed by § 3848, declaring that the village of Loma had been duly incorporated. The order so made purported to contain a description of the lands included within the village. In copying the description a clerical error was made in this, that an entire line was left out with the result that the order as written did not include the territory formerly within the plaintiff school district. The mistake being called to the attention of the board of county commissioners, they subsequently, after the commencement of this action, on October 4, 1926, entered an order correcting the error made in the order of July 12.

On July 2, 1926, after notice duly given (Comp. Laws 1913, § 3850) an election was held at which officers were duly elected for the village of Loma. Such officers consisted of a board of three trustees, clerk, assessor, treasurer, marshal and justice of the peace. Thereafter these officers duly qualified and entered upon the discharge of their duties. On or about July 20, 1926, a petition was duly presented to the board of trustees of the village of Loma asking that the village of Loma be organized into a special school district. The petition complied in all respects with the provisions of § 1243, supra. In compliance with the petition, the board of trustees of the village of Loma called an election for July 31, 1926 to vote upon the question whether the village of Loma should be organized as a special school district. After due notice the election was held and forty-seven votes were cast in favor of the organization of the village of Loma into a special school district; there were no votes cast against the proposition. Thereupon, the board of trustees declared the village of Loma organized into a special school district and called an election for August 11, 1926 for the purpose of electing officers of the special school district. The election was held at the time appointed, after notice duly given and posted as required by law, and the defendants, Peter Sullivan, C. M. Lane, Joseph Wilhelmi, Mrs. M. Archer, and Mrs. C. G. Pederson, were elected members of the board of educa-

tion of Loma special school district and these persons thereafter duly qualified and entered upon the discharge of their official duties.

The contentions of the plaintiff and intervener are:

(1) That the village of Loma was not legally organized and that, consequently, the special school district, purported to have been organized out of territory within the boundaries of the village of Loma, has no legal existence.

(2) That in any event the village of Loma includes only the territory described in the final order entered by the county commissioners on July 12, 1926; and that the territory described in the petition for the incorporation of the village, which was omitted from such final order, constituted no part of the village of Loma at the time the proceedings were had to organize the special school district and, hence, is not included in such special school district.

(3) That § 1243, supra, is not applicable to the organization of a special school district in the circumstances existing in this case and that the proceedings had purporting to organize a special school district under that section are invalid. These contentions will be considered in the order stated.

(1–2) It is asserted that the village of Loma was not legally organized for the following reasons:

(a) That although there is no express provision in the statutes of this state relating to the incorporation of villages as to the extent or character of territory that may be included within the boundaries of an incorporated village, there is, nevertheless, an implied limitation that only such territory may be included as is urban in character. (b) That the village of Loma was organized with the sole object of later organizing the village into a special school district and that, consequently, the organization of the village was a fraud in law upon the plaintiff school district and the persons who continue to be residents and taxpayers thereof. (c) That the failure to include all the territory described in the petition for the incorporation of the village in the final order entered by the county commissioners on July 12, 1926 invalidated the alleged incorporation of the village.

As regards the first objection, we are of the opinion that it is not available to the plaintiff in this case. The question as to what territory should or should not be included within a village is primarily a legisla-

tive or political question. The legislature of this state has provided that when it is sought to incorporate a village, the electors of the territory proposed to be created into a village are to determine, at an election called for that purpose, whether such territory shall or shall not be incorporated as a village. The legislature has further provided that the board of county commissioners of the county shall be the tribunal to determine the various questions incident to the incorporation. In this case the proceedings prescribed by law, looking toward the incorporation of the village of Loma, were duly had; and so far as the record in this case shows, every elector of the territory sought to be included within the village of Loma exercised the franchise and the overwhelming majority voted in favor of the incorporation. And not a single person, resident of, or taxpayer within, the territory included within the boundaries of the village of Loma has assailed the validity of the incorporation. The statutes relating to villages contain no requirement as to the extent in area of a village. Nor is there any requirement that platted property alone, or that property used solely for urban purposes, be included. On the contrary, the statute relating to the exclusion of territory from a village recognized that territory not urban in character may be, or may have been, included within the boundaries of a village. Section 3969, Comp. Laws 1913 provides that when lands bordering upon and within the limits of any incorporated village are wholly unplatted and no municipal improvements made or constructed therein, it shall be the duty of the board of trustees of the village, to disconnect and exclude such territory from the village upon petition in writing, signed by not less than three-fourths, in value, of the property sought to be excluded. This statute recognizes that property not urban in character may be, and probably has been, included within villages in this state; and it affords the owners of property, and electors, in such territory a remedy to have the territory excluded. It leaves however to such electors and owners the right to initiate the proceeding to have territory excluded. The policy of the law seems to be that, if they are satisfied to have the territory remain within the village no one else is in a position to complain. Enderson v. Hildenbrand, 52 N. D. 533, 541, 204 N. W. 356.

The village of Loma was duly incorporated in the manner provided by law. A proceeding instituted by the plaintiff questioning the validity

of the incorporation proceeding was decided adversely to it and no appeal was taken from such decision. We are wholly agreed that the question now sought be raised cannot be inquired into collaterally. In order to assail the incorporation of the village of Loma, the plaintiff, in this case caused witnesses to be sworn and evidence to be adduced as to matters wholly outside of the record of the proceedings of the incorporation. Obviously the plaintiff in this case would have had no standing to maintain an action or proceeding to annul the incorporation of the village. Plaintiff does not claim any injury or right of action because certain territory within its boundaries was included within the village of Loma; the claim of injury and right of action is predicated upon the proposition that such territory was included within Loma special school district. It is the organization of the school district that plaintiff seeks to have avoided; and the attack upon the incorporation of the village is incidental to the attack made upon the organization of the school district. In a word, the end sought by the plaintiff in this case is to have the organization of Loma special school district adjudged invalid and the attack made upon the incorporation of the village of Loma is merely a means by which the desired end is sought to be achieved. The objection raised to the village incorporation proceedings in this action is, in our opinion, a collateral attack thereon and not available to the plaintiff here. Van Fleet, Collateral Attack, §§ 3 and 4; Coler v. Dwight School Twp. 3 N. D. 249, 28 L.R.A. 649, 55 N. W. 587; 43 C. J. pp. 99, 100. In Corpus Juris it is said:

"Subject to certain limitations, the state may question the legality of the incorporation and existence of a municipality by a proceeding in quo warranto, and where the attempted incorporation is an absolute nullity, it is subject to collateral attack. On the other hand, where the municipality is at least a de facto corporation, the validity of its organization and corporate existence can be questioned only by the state in a direct proceeding, such as quo warranto, brought through the instrumentality of the attorney general or such other officer or person as is authorized to invoke the remedy; it cannot be questioned in a collateral proceeding, especially in a suit by or against an individual, such as a suit to collect taxes or assessments, to review an assessment of taxes, to enjoin the imposition or collection of a tax or assessment, to recover property, or its value, seized or sold for taxes, to remove a cloud on the title resulting

from a tax sale, to restrain the election of officers, or to enjoin the enforcement of an ordinance. Also the question cannot be raised in a prosecution for violation of an ordinance or a habeas corpus proceeding to procure release from arrest under an ordinance. A de jure corporation is impregnable to assault in the courts from any source." 43 C. J. pp. 99, 100.

The contention that the incorporation of the village of Loma was a fraud in law upon the plaintiff school district and the residents thereof is, we think, disposed of by what has been said above. We are aware of no rule of law which makes it fraudulent for electors and property owners to avail themselves of the provisions of law for the creation of political corporations or for changing the boundaries of existing ones.

(3) We are also agreed that the error made in the final order entered by the county commissioners on July 12, 1926, in no manner invalidated the proceedings had for the incorporation of the village of Loma. As said, in this case the proceedings were in all respects in conformity with law up to the entry of such final order. A survey had been made, a map prepared, a census taken, a petition made, signed and verified and presented to the county commissioners. A hearing had been had on the petition after notice duly given and the county commissioners had entered the order as prescribed by § 3844, supra, declaring that certain territory, therein particularly described, should, with the assent of the qualified voters thereof, be an incorporated village by the name of Loma. The assent of the voters was given at an election called and held in the manner provided by law; and the qualified voters of the proposed incorporated village, had, by a decisive majority, given their "assent" to the incorporation. It is the mandate of the statute that "im a majority of" the ballots cast at such election shall be in favor of incorporation *"such territory shall from that time be deemed an incorporated village and shall thereafter, for all purposes except the payment of any prior bonded indebtedness, be separate and disconnected from any township with which it theretofore formed a part and to have continuance thereafter by the name and style specified in the order made by the county commissioners as hereinbefore (Comp. Laws 1913, § 3844) provided."* At the time of the entry of the order of July 12, 1926, the county commissioners had no power to change the boundaries of the proposed village. The sole remaining duty on their part was to

examine the returns of the election and if "satisfied with the legality of such election" they were required to "make an order declaring that said village has been incorporated, by the name adopted." The description of the territory to be incorporated as the village of Loma was set forth with particularity in the map, the petition for incorporation, and in the order entered under § 3844, supra, and there was no necessity for again describing the territory in the order entered upon the canvass of the election returns. The question of the boundaries of the village was not one for the determination of the board of county commissioners at that time. The only questions for them to determine at that time was whether the election had been legally conducted and whether a majority of the ballots cast at the election were in favor of the incorporation. The error in the description in the order entered on July 12, 1926, was, in our opinion, of no consequence whatsoever.

(4) It is next contended that § 1243 supra, is not applicable to the organization of a special school district in the circumstances existing in this case, and that such organization is controlled by §§ 1230–1232, Comp. Laws 1913. In short, it is contended that § 1243 applies only where an existing common school district has the same boundaries as the village or city which it is sought to organize as a special school district. The same contention was advanced in Sayre v. Alsen, 48 N. D. 1138, 1140, 189 N. W. 240, but not determined. The question thus presented is one of some difficulty, as is frequently the case where questions arise involving the construction of statutes relating to the public schools. The decisions of this court bear ample evidence that these statutes contain many provisions couched in doubtful and even inconsistent language. It is regrettable that this should be so. It goes without saying that all laws,—and especially these,—ought to be made so plain, certain and definite as to speak for themselves to the end that the persons charged with the administration of school affairs may not be left in doubt as to their powers and duties.

In seeking to ascertain the meaning of a statute couched in doubtful, ambiguous or inconsistent language, the courts may resort to certain extrinsic or external aids. They may properly consider the history of the legislation, and the interpretation put upon it at the time of its enactment and since by those whose duty it has been to construe, execute and apply it. 26 Am. & Eng. Enc. Laws, pp. 632, 633. While the term

"special school district" first appeared in our laws in 1890, the provisions embodied in chapter 62, Laws 1890 (providing for the organization of a "special" school district out of territory lying within the boundaries of an incorporated city or village, and the annexation of adjacent territory to such special school districts), had their prototypes in the laws of the territory of Dakota. See Compiled Laws of Dakota, 1897, §§ 1808–1810. An examination of these territorial statutes indicates quite clearly that under the laws in force in this state at the time Chapter 62, Laws 1890 was enacted, an incorporated city or village lying within one or more school townships or common school districts might be organized for school purposes without submitting the question to the electors in the remainder of the school corporation or corporations affected by such organization.

Section 1243 was first enacted in this state in 1890. See Laws 1890, chapter 62, § 173. As originally enacted the section read:

"When a petition signed by one-third of the voters of a city or incorporated town or village, entitled to vote at school elections, is presented to the council or board of trustees thereof asking that said city, town or village be organized as a special school district, such council or board of trustees shall order an election for the purpose, notice of which shall be given and the election conducted and returns made in the same manner as is provided by law for the annual election of municipal officers of such corporation; and the voters thereof shall vote for or against 'organization as a special school district' at such election."

Chapter 62, Laws 1890, also contained the original enactment of §§ 1229 and 1240, Comp. Laws 1913. See Laws 1890, chapter 2, §§ 169, 170. As enacted in 1890, § 1240 read as follows:

"When any city, town, or village has been organized for school purposes, and provided with a board of education, under any general school law, or a special act, or under the provisions of this article, territory outside the limits thereof but adjacent thereto, may be attached to such city, town or village for school purposes by the board of education thereof, upon application in writing signed by a majority of the voters of such adjacent territory; and upon such application being made, if such board shall deem it proper and to the best interests of the schools of said corporation and the territory to be attached, an order shall be issued by such board attaching such adjacent territory to such corporation for school

purposes and the same shall be entered upon the journal of the board; and such territory shall from the date of such order be and compose a part of such corporation for school purposes only, such adjacent territory shall be attached for voting purposes to such corporation, or if the school election is held in wards, to the ward, or wards, or election precinct or precincts to which it lies adjacent; and the voters thereof shall vote only for school officers, and upon school questions."

While certain changes have been made in these statutes, the changes are of no consequence as regards the questions involved here, and do not evidence any intention to change or deviate from the original purpose prescribed by § 1243.

One of the main points stressed by the appellant in favor of the construction of § 1243 for which he contends, is that it is and has been the policy of the laws of this state to permit no change in the boundaries of school districts unless the electors in all parts of the districts affected by the proposed change are afforded an opportunity to vote upon the question whether the boundaries shall be altered. And it is said that if § 1243, supra, is construed as affording the electors of an incorporated city or village (which constitutes a part of one or more school districts), the right to organize the city or village into a special school district by submitting the question to the electors of the city or village alone, and not to the electors in the remaining portions of the district or districts affected, it would be violative of the spirit of our laws relating to creation, or change of boundaries, of school districts. It will be noted that the legislature which enacted § 1243, in a companion provision in the same law (Laws 1890, chapter 62, § 170), specifically provided that territory might be attached to a special school district by action of the board of education of the district upon the petition of a majority of the electors in the territory sought to be annexed, and this wholly without regard to the wishes of the electors residing in the remainder of the district or districts from which such territory was taken. Hence, as regards the annexation of territory to a special school district, the very principle for which appellant contends was specifically denied.

Sections 1230–1232, Comp. Laws 1913, were first enacted in this state in 1901. Laws 1901, chapter 186, §§ 1, 2. Therefore, from July 1, 1890, until July 1, 1901, there was in this state no method of procedure for organizing a special school district except that prescribed by

§ 1243. If appellant's argument is sound, then, there was not prior to July 1, 1901, any provision of law whereby an incorporated city or village (which formed part of one or more common school districts) could be organized into a special school district.

The legislative assembly which enacted §§ 1230–1232, Comp. Laws 1913 expressly provided that nothing in the act containing these sections should "be construed to prevent or affect the formation of special school districts in accordance with the provisions of law" then in force; and the act contained an emergency clause to the effect that "there is no provision of law for the division of school districts and school property by mutual agreement." Laws 1901, chap. 186, §§ 11, 12. The legislative assembly in 1911 enacted a measure purporting to codify the school laws. Laws 1911, chap. 266. In such enactment §§ 1230–1232 were retained in substantially the same language in which they then existed, and § 1243, supra, and the companion sections (contained in chapter 62, Laws 1890, and chapter 75, Laws 1897) were also retained or re-enacted practically without change. Chapter 266, Laws 1911, also retained the same principle as regards the annexation of territory to special school districts as that adopted in chapter 62, Laws 1890. See Laws 1911, chapter 266, § 133. The fundamental theory and purpose of the statutes relating to special school districts as originally enacted seems to have been that either an incorporated city or village may, when a majority of the electors thereof so desire, be formed into a special school district. Subsequent amendments to the statute did not alter this purpose but merely enlarged it so as to include not only incorporated cities and villages, but also a school district containing a platted or incorporated village or city.

It is suggested by the appellant that even though § 1243 in the first instance was applicable to the organization of special school districts in a case where an incorporated village or city was a part of one or more common school districts, it was rendered inapplicable by the legislative enactment of 1911. This argument does not impress us and we know of no sound rule of statutory construction justifying such conclusion. The inclusion of § 1243 in chapter 266, Laws 1911, did not constitute it an original enactment. It was merely a re-enactment of a then existing provision of law with a very slight amendment which in no manner affected the spirit or purpose of the law as regards the

question under consideration here. While the statute of 1911 purported to repeal former sections, it was, so far as concerns §§ 1243 and 1240, a re-enactment of the then existing statutory provisions and in legal effect merely continued in force the provisions of the old law as amended. Golden Valley County v. Lundin, 52 N. D. 420, 203 N. W. 317.

Section 1243, however, does not apply where it is sought to organize a special school district of an incorporated city or village and additional territory contiguous thereto. Sections 1230–1232, and they alone, apply in such case. These sections also purport to apply where it is sought to organize a special school district out of a portion of another district, and this brings about the alleged conflict between these sections and § 1243. As has been indicated, it appears, however, that those charged with the duty of administering and applying the school laws of this state have construed § 1243, supra, as applicable to the organization of special school districts in a case where, as here, it is sought to organize an incorporated village or city (which is a part of one or more common school districts) into a special school district. The former decisions of this court bear evidence of this; and special school districts so organized have been permitted to remain in existence without challenge on the part of the state and the public officers charged with the duty of administering and enforcing the laws of the state. In light of the history of the legislation and the practical construction placed thereon, we are inclined to the view that § 1243 has not been affected by §§ 1230–1232; that the latter sections in certain cases merely provide a cumulative method for the organization of special school districts and that § 1243 remains wholly unimpaired and is applicable in all cases where it is sought to organize a special school district only out of territory included within an incorporated city or village "or a school district in which is located a city or incorporated or platted town or village."

There is some suggestion in appellant's brief that, if § 1243, supra, is construed so as to permit an incorporated village or city to be organized into a special school district without affording the electors in other school districts whose boundaries will become changed as a result of the organization of such special school district, an opportunity to vote on the question, then § 1243 is unconstitutional. No specific sections of the Constitution are pointed out as having been violated, nor does it appear that the question was raised in the court below. In these circumstances,

of course, no constitutional question is presented for determination on appeal. In any event the arguments advanced by the appellant upon the question of constitutionality seem to be fully answered by the decision of this court in School Dist. v. King, 20 N. D. 614, 127 N. W. 515, and that of the United States Supreme Court in Atty. Gen. ex rel. Kies v. Lowrey, 199 U. S. 233, 50 L. ed. 167, 26 Sup. Ct. Rep. 27.

This disposes of the various questions presented on this appeal, and it follows that the judgment appealed from must be affirmed. It is so ordered.

NUESSLE, Ch. J., and BURKE, BIRDZELL, JJ., and PUGH, Dist. J., concur.

BURR, J., being disqualified, did not participate, Hon. THOMAS H. PUGH, Judge of the Sixth Judicial District, sitting in his stead.