JOHN A. HUNTER v. CITY OF TRACY.

CHRISTINA A. HUNTER v. SAME.

LEON EUZIERE and Another v. SAME.[1]

June 5, 1908.

Nos. 15,612—(103).

**Act Constitutional.**

The subject of chapter 221, Laws 1907, providing for the separation of unplatted agricultural land from the corporate limits of .cities of ten thousand or less inhabitants, is properly expressed in its title. The statute is not unconstitutional because it excepts from its operation cities having home rule charters. Nor does it arbitrarily discriminate in favor of owners of agricultural land, or owners of forty or more acres of land. Nor does it delegate legislative powers to the courts. It is constitutional. The findings of fact herein are sustained by the evidence.

Three proceedings in the district court for Lyon county to detach certain lands from the city of Tracy. The petitions were heard before Olsen, J., who made findings and ordered judgment in favor of petitioners, separating their land in question from the city of Tracy, and that it shall thereupon be detached and become a part of the township in which it was originally situated, but that such separation shall not release such land from its liability on account of any outstanding bonded indebtedness of the city of Tracy at the time of entry of judgment. From these orders and the judgments entered pursuant thereto, the city of Tracy appealed. Affirmed.

*Korns & Johnson*, for appellant.

*F. S. Brown* and *Somerville & Hauser*, for respondents.

START, C. J.·

Each of the respondents herein presented to the district court of the county of Lyon a petition for a decree detaching the land therein described from the corporate limits of the appellant herein, the city of Tracy, pursuant to the provisions of chapter 221, p. 294, Laws 1907, which is entitled "An act to provide in certain cases for the separation from cities, containing ten thousand inhabitants or less,

[1] Reported in 116 N. W. 922.

of unplatted agricultural lands included within the corporate limits of such cities." A hearing was duly had upon each petition, and in each case the trial court found that the tract of land described in the petition was unplatted and of the character and quantity designated in the act, and that it was used exclusively for agricultural purposes, and, further, that it could be detached from the corporate limits of the city of Tracy without unreasonably affecting the symmetry of the settled portions thereof. Thereupon judgment so detaching the land was ordered and entered in each case, and the city appealed from the judgments.

1. Errors are assigned by appellant which raise the question of the sufficiency of the evidence to sustain the findings of fact in each of the several cases. The evidence tends to show that three acres of one tract of forty acres is low, wet, and not tillable, hence not used for any purpose; that another tract is used for pasturing and feeding cattle, and portions of all of the tracts are used for highways thereon. It is therefore urged that none of them is used exclusively for agricultural purposes, and that the finding to that effect is not sustained by the evidence. This is too narrow a view of the statute, and one which would defeat its purpose in nearly every instance. The statute is a remedial one, and must be liberally construed. As we construe it, the statute requires that the sole primary use of the land, in order to bring it within the statute, must be for agricultural purposes; but the use of any part of it for purposes incidental to its primary use, such as buildings, highways, and similar purposes, does not exclude it from the operation of the statute. The findings of fact are in each case sustained by the evidence. This brings us to the question whether the statute purporting to authorize the judgments appealed from is constitutional.

2. It is urged by appellant that the act in question is unconstitutional, for the reason that from its title it appears that the act applies to all cities of the state having ten thousand inhabitants or less, while by section 4 of the act cities that have adopted home rule charters are excepted from the operation of the act; hence the subject of the act is not expressed in its title. The subject-matter of the act, as expressed in its title, is the separation of unplatted agricultural lands from the corporate limits of cities of ten thousand or less inhabitants, and the provisions of section 4 of the act, to which reference

has been made, are in the nature of an exception to the general provisions of the act, which are all germane to the general subject-matter of the act, as expressed in the title. It is not necessary that the title of a statute should contain a reference to all the exceptions and provisos in the body of the act which relate to the general subject expressed in the title. If the rule were otherwise, a majority of legislative acts would be unconstitutional. The exception to the statute here in question is in the identical language of exceptions contained in other statutes relating to cities of ten thousand or less inhabitants, which have been held to be constitutional, although no reference to the exceptions was made in the title. See, for example, chapter 382, p. 690, Laws 1903, the title of which was held sufficient in Merchants Nat. Bank of St. Paul v. City of East Grand Forks, 94 Minn. 246, 102 N. W. 703. The title of the act in question is sufficient, for there is nothing in the body of the act foreign to the general subject expressed in the title; for, as suggested, the exception relates to cities of ten thousand or less inhabitants, the very class referred to in the title. Lien v. Board of County Commrs. of Norman County, 80 Minn. 58, 82 N. W. 1094; State v Gunn, 92 Minn. 436, 100 N. W. 97.

3. It is also urged that the statute is unconstitutional, because it does not apply equally to all cities of the state having ten thousand or less inhabitants, in that all such cities which theretofore have adopted home rule charters are excepted, by section 4 of the act, from its operation, while those thereafter adopting such charters are included therein. The language of the section does not justify the claim. The language used is as follows:

"Exceptions.—Sec. 4. This act shall not be construed as in any manner superseding, repealing, amending or qualifying the provisions of any home rule charter heretofore adopted by any city or village under the laws of this state, and this act shall not in any manner apply to any such city or village."

Unless this language be construed as excepting from the operation of the statute all cities of the class named having home rule charters, no effect can be given to the last clause of the section. If it may be reasonably done, such a construction must be given to the language used in a statute as will give effect to all the provisions thereof, and if it is reasonably susceptible of two different constructions,

one of which will render the act constitutional and the other unconstitutional, the former must be accepted. · Hurst v. Town of Martinsburg, 80 Minn. 43, 82 N. W. 1099. This section may fairly be construed, and we so construe it, as exempting from its operation all cities of ten thousand or less inhabitants which have or may thereafter adopt home rule charters. The placing of home rule charter cities having ten thousand or less inhabitants in a class by themselves is in accordance with the constitution (article 4, § 36), which provides, not only for the classification of the cities by population, but also for a class of cities which have or may have home rule charters. This classification is not arbitrary, for it rests upon the obvious reason that, if such cities must be made subject to all general legislation affecting cities, then home rule charters would be of but slight, if any, advantage. Again, it would lead to great confusion and conflict between the provisions of home rule charters and general laws, if cities having such charters could not be placed in a class by themselves and excepted from general laws relating to cities. We hold that the statute is not unconstitutional because home rule charter cities are excepted from its operation.

4. Again, it is urged that this statute is unconstitutional because it arbitrarily creates a class of landowners—that is, those who own forty acres or more of land, within the corporate limits of the cities named therein, occupied and used exclusively for agricultural purposes—and gives to them the benefits of the act and excludes therefrom all other landowners. The legislature cannot adopt a mere arbitrary classification, for any classification for the purposes of legislation must rest upon "such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them." Nichols v. Walter, 37 Minn. 264, 272, 33 N. W. 800; State v. Brown, 97 Minn. 402, 106 N. W. 477. Courts, however, cannot review legislative discretion and declare a given classification arbitrary simply because they differ with the legislature as to the propriety of the classification and the sufficiency of the reasons upon which it is based; for the lawmaking power is vested in the legislature. It must not be lightly assumed that legislators are less wise, or less mindful of the mandates of the constitution, than judges are. Therefore

it is only in cases where it is manifest upon the face of a statute that a classification therein is based upon no reason, but is purely an arbitrary act, that courts may and must, for that reason, declare unconstitutional. State v. Westfall, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297, 89 Am. St. 571; State v. Brown, 97 Minn. 402, 106 N. W. 477.

It is quite clear that the statute in question does not arbitrarily discriminate in favor of the owner of land occupied and used for agricultural purposes, for it is not difficult to suggest reasons for the classification in this respect. The retention of large tracts of rural or agricultural lands within the territorial limits of cities, which are not needed for municipal purposes, and which receive no benefit from being within the city limits, and which are subjected thereby to increased taxation simply for the benefit of the municipality, is an injustice. The statute in question was intended to afford a remedy in such cases. It is manifest that rural lands used exclusively for agricultural purposes do not sustain the same relation to the municipality as do unplatted lands which are used for manufacturing or mining or other similar purposes; for lands of the latter class may, and usually do, derive a benefit from the municipality in many ways, such as the benefit of police protection, water, lights, and sewerage, while those of the latter class do not. It follows that the classification of land, with reference to its character and use, in the statute under consideration cannot be held to be merely arbitrary and obviously based upon no reason. Stees v. Bergmeier, 91 Minn. 513, 98 N. W. 648.

5. It is also claimed by the appellant that the statute arbitrarily discriminates against the owners of small tracts of land in favor of the owners of larger ones. In all cases of classification the line of demarkation must be drawn at some point by the legislature, and it is easy to suggest border cases, the exclusion of which from a particular class would seem to be without reason and arbitrary. So in this case counsel for the appellant asks: "Is there any reason why the small farmer, the poor man, shall be thus discriminated against? Is not his twenty acre, ten acre, or even five acre tract, otherwise within the purview of the act, as much entitled to the benefit of the law as the land of his more opulent neighbor, who has forty acres or

more?" This method of argument can, with equal effect, be applied to nearly every classification of persons or subjects. To illustrate: Why should the owner of land on one side of the boundary line of a city be entitled to eighty acres as a homestead, while the owner of land on the other side of the line is entitled only to a single lot? Why should the area of a homestead be limited to one-half of an acre in cities containing one less than five thousand inhabitants, while the limit is one-third of an acre in a city containing five thousand inhabitants? Chapter 335, p. 458, Laws 1907.

The answer to such question is that the apparent discrimination is necessary in order that laws may be certain and practical in their operation; for the line must be drawn somewhere, if there is to be any classification. Small subdivisions of rural land, although used for the time being exclusively for agricultural purposes, are more likely to be needed for urban purposes and to derive benefits from the municipality than larger ones; for the smaller subdivisions of land in a municipality are found, as a general rule, nearest to the center of population. The detaching from the territorial limits of a city of every tract of land, however small, simply because, for the time being, it happens to be used for agricultural purposes, would seem to be unjust and unreasonable; on the other hand, the retention of large tracts of land, farms, which are strictly rural and are likely to remain so, deriving no benefit from the municipality and conferring none upon it, except to increase its revenues by way of taxes, would seem to be equally unreasonable and unjust. This difference in the relation of small tracts of agricultural land, within the corporate limits of a city, to the municipality, and that of larger tracts, might well suggest to the legislature the propriety of a classification of such lands on the basis of area, and, having done so, the courts cannot review its discretion. The liability of small tracts being isolated by detaching larger tracts is guarded against by the provision of the statute as to the preservation of the symmetry of the settled portions of the city. It is far from clear that the classification complained of is simply arbitrary; hence it must be held to be valid.

6. The claim is also made that the statute is unconstitutional because it delegates legislative powers to the court, for the alleged reason that the statute provides that the court may or may not, in its

discretion, grant a decree detaching land from the corporate limits of a city in any and all cases, although plenary proof may be made of all facts and conditions which authorize the making of the decree. It is true that the language of the statute is that if the court shall find the existence of the necessary facts and conditions it may grant the decree, and, further, that in the original bill the word "shall" was used, but was changed by amendment to "may." In a doubtful case the history of a statute is significant; but, reading and construing all the provisions of this statute together, it is reasonably clear that the court is without discretion to refuse the decree if all the essential facts and conditions to support the decree are proven and found. This case, then, falls within the rule that, whenever public interests or individual rights call for the exercise of a power given to courts or other public officers, the language used in conferring the power, although permissive in form, is in effect mandatory. Bowen v. City of Minneapolis, 47 Minn. 115, 49 N. W. 683, 28 Am. St. 333; State v. Gunn, 92 Minn. 436–443, 100 N. W. 97. The legislature by this statute solved for itself the legislative question as to the propriety of detaching lands in any case from the territorial limits of a city, and declared upon what facts and conditions it should be done, and conferred upon the courts the judicial duty of ascertaining, in each particular case, the existence of the necessary facts and conditions. Such a statute is constitutional. State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 37 N. W. 782; State v. Great Northern Ry. Co., 100 Minn. 445, 111 N. W. 289, 10 L. R. A. (N. S.) 250.

7. The last contention of appellant to be considered is to the effect that, because section 3 of the act provides that the separation of any land from a city shall not release it from liability—that is, taxation—on account of any existing bonded indebtedness of the city, but did not provide how the liability should be enforced, the statute cannot apply to cities having a bonded indebtedness. It is not necessary to determine whether the statute would have been constitutional if it had been, by its terms, limited to cities of ten thousand or less inhabitants having no bonded indebtedness, for the construction of the statute contended for is not a reasonable one. The statute simply provides that the existing liability of land for the bonded indebtedness of a city from which it may be detached shall not thereby be released. It does not follow, from the fact that this particular statute does not

prescribe any method for enforcing the liability, that a practical method of enforcing it may not be found. But, if there be none, the statute is nevertheless valid; for the statute provides for the detaching land without proof of, or an adjustment of, the bonded indebtedness of the city. The legislature has the right to change the boundaries of a municipality without apportioning its indebtedness and providing for the enforcement of the liability therefor. Commissioners of Laramie Co. v. Commissioners of Albany Co., 92 U. S. 307, 23 L. Ed. 552; City of Winona v. School-District No. 82, Winona County, 40 Minn. 13, 41 N. W. 539, 3 L. R. A. 46, 12 Am. St. 687.

We hold that the statute under consideration is constitutional, and that the judgments appealed from must be affirmed.

So ordered.

LEWIS, J. (dissenting).

The act in question applies to the owner of any unplatted tract of land containing not less than forty acres used and occupied exclusively for agricultural purposes. I concede there is a natural distinction between agricultural lands and those used for manufacturing, mining, and similar purposes, and that some provision may reasonably be made for accomplishing the withdrawal of such lands from the corporate limits of cities containing ten thousand inhabitants or less, but am unable to discover any difference between the position of an owner of a forty acre tract and owners of thirty, twenty, ten, or five acre tracts. Whether any such tract should be withdrawn does not depend upon its size, but upon the manner it may affect the corporation of which it is a part. The real test is whether, considering its location with respect to the laid-out and inhabited portion, the municipality would be substantially affected by the release of a tract of agricultural land, and the size of the tract has no definite relation to that question. That a line had to be drawn somewhere is not a sufficient answer, and does not justify the line drawn by this law.

I consider the classification as purely arbitrary, in the interest of a special class of owners, and for that reason unconstitutional.

JAGGARD, J.

I concur in the dissent.