## IN RE DETACHMENT OF UNPLATTED LANDS FROM CITY OF OWATONNA.
### CLINTON FALLS NURSERY COMPANY AND OTHERS, APPELLANTS.[1]

April 2, 1931.

Nos. 28,126, 28,241.

[1]Reported in 236 N. W. 195.

*Victor E. Anderson,* for appellants Clinton Falls Nursery Company and others.

*Sawyer, Lord & Munck,* for appellant Wesely.

*Leach & Leach,* for respondent city of Owatonna.

*Harold S. Nelson,* for respondent Owatonna School District.

DIBELL, J.

The Clinton Falls Nursery Company and others petitioned the district court that certain lands be detached from the city of Owatonna pursuant to the provisions of. L. 1927, p. 193, c. 122, 1 Mason, 1927, § 1726-6, et seq. The petition was denied, and the petitioners appeal from an order denying their motion for a new trial.

The statute under which the proceeding is brought provides for the separation of unplatted agricultural or horticultural lands included in the corporate limits of cities containing 10,000 inhabitants or less and from school districts contained in such cities and for the attachment of them to adjoining towns, townships, and school districts, and repeals G. S. 1923, § 1722, which referred to the effect upon the existing indebtedness. The provisions of the statute are declared to be supplemental and additional to G. S. 1923, §§ 1720, 1721, 1723, 1724, and 1725, which relate to detachment of lands in cities of the fourth class.

The 1927 statute provides that the owners of 75 per cent or more of contiguous unplatted tracts containing not less than 200 acres, or the owners of an unplatted tract containing not less than 40 acres, where used exclusively for agricultural or horticultural purposes, may petition the district court for a decree detaching such lands from the city and the school district; and if the court finds that such lands are used exclusively for agricultural or horticultural

purposes and may be detached from the city and school district without unreasonably affecting the symmetry of the settled portions of the city, it shall grant such a decree detaching the lands from the city and school district.

Section 3A provides:

"This act shall not apply to any city which at the time of the commencement of proceedings in court for the detachment of any territory therefrom has within its corporate limits less than 3,000 acres of land used exclusively for agricultural or horticultural purposes, nor to any city in which the territorial limits thereof are not identical with the limits of a school district situated therein."

The statute provides for notice to the city and school district. No notice is required to owners of the land detached. All of the owners of the lands proposed to be detached joined in the petition except that the state, which owned 160 acres, and two railroads, having rights of way across certain portions of the land, did not join.

▆ The court found that the city contained more than 5,400 acres of land; that more than 3,000 acres were used exclusively for agricultural or horticultural purposes; that the petitioners owned more than 75 per cent of the land sought to be detached; that they were the owners of all of such lands except the quarter section owned by the state and except that over which the two railroads had their rights of way. In brief, without stating the facts in further detail, the court found the existence of all of the conditions essential to the granting of the petition. It refused to grant it upon the ground that the statute was unconstitutional.

It is claimed that the statute is unconstitutional because it does not provide for notice to the landowners whose land is detached. All of the landowners joined in the petition except the state and the railroads. Municipal corporations, such as cities and school districts, are in a sense agencies of the state. The legislature may determine their boundaries and provide for the annexation and detaching of territory. 4 Dunnell, Minn. Dig. (2 ed. & Supp.)

§§ 6521, 6527; 5 Id. § 8664. Doing so without notice to the parties whose lands are annexed or detached is not a taking without due process. Lenox Land Co. v. City of Oakdale, 137 Ky. 484, 125 S. W. 1089, 127 S. W. 538; Taggart v. Claypool, 145 Ind. 590, 44 N. E. 18, 32 L. R. A. 586; Wertz v. City of Ottumwa, 201 Iowa, 947, 208 N. W. 511; Hewey v. Cudahy Packing Co. (C. C. A.) 269 F. 21; Kramer v. County of Renville, 144 Minn. 195, 175 N. W. 101, and cases cited; 19 R. C. L. p. 732, § 38, et seq; 43 C. J. 127. The failure of the statute to provide for notice to owners does not render it unconstitutional for want of due process or upon other grounds.

■ The other claim of unconstitutionality is that the statute is class or special legislation inhibited by art. 4, §§ 33, 34, of the constitution.

In In re Petition of Norrish, 155 Minn. 415, 193 N. W. 947, the court held the then existing law relative to detachment inapplicable where the city comprised a school district created by special act. The court said that it was likely that the situation was cared for by L. 1923, p. 276, c. 234, enacted subsequently to the commencement of the proceeding there involved, which provided for the separation of agricultural lands from cities and school districts therein. This act is now embodied in 1 Mason, 1927, §§ 1726-1 to 1726-5. Chapter 234 was involved in Millett v. City of Hastings, 179 Minn. 358, 229 N. W. 346, and was held unconstitutional as special legislation. The present statute followed and was intended to obviate the hardships which often result from including in cities and subjecting to a larger tax rate lands which are agricultural and essentially rural. So, in referring to a similar statute, the court in Hunter v. City of Tracy, 104 Minn. 378, 382, 116 N. W. 922, 923, said:

"It is quite clear that the statute in question does not arbitrarily discriminate in favor of the owner of land occupied and used for agricultural purposes, for it is not difficult to suggest reasons for the classification in this respect. The retention of large tracts of rural or agricultural lands within the territorial limits of cities, which are not needed for municipal purposes, and which receive

no benefit from being within the city limits, and which are subjected thereby to increased taxation simply for the benefit of the municipality, is an injustice. The statute in question was intended to afford a remedy in such cases. It is manifest that rural lands used exclusively for agricultural purposes do not sustain the same relation to the municipality as do unplatted lands which are used for manufacturing or mining or other similar purposes; for lands of the latter class may, and usually do, derive a benefit from the municipality in many ways, such as the benefit of police protection, water, lights, and sewerage, while those of the latter class do not. It follows that the classification of land, with reference to its character and use, in the statute under consideration cannot be held to be merely arbitrary and obviously based upon no reason."

Prior to the decision in the Millett case, 179 Minn. 358, 229 N. W. 346, the legislature, perhaps doubting the adequacy of the then existing statute, enacted L. 1927, p. 193, c. 122.

A statute is presumed to be constitutional. Whether it is special is a judicial question. Yet the classification is first for the legislature, and its judgment is to be respected. The requirement that there be 3,000 acres devoted to agricultural or horticultural lands before the statute applies is not arbitrary. If there is more than that amount of land so used in a city of 10,000, or less, there is a suggestion that a body of rural land is included with land which is urban; and besides some amount is properly left for future development. The limit must be fixed somewhere. It is much a question of policy. The difficulty which was thought to follow in In re Petition of Norrish, 155 Minn. 415, 193 N. W. 947, because the detaching of lands from the city would leave the withdrawn lands without any school district connections, is cared for in the statute, and we do not have what it was said in that case would be a disorganizing result if a detachment were had. We find nothing in the statute which leads us to hold it unconstitutional as special legislation. There is some discretion in the legislature in adopting a construction. They know more about the subject upon which they legislate than we do. A classification need not be perfect.

There are questions of practicability. In Hunter v. City of Tracy, 104 Minn. 378, 381, 116 N. W. 922, 923, the court said:

"Courts, however, cannot review legislative discretion and declare a given classification arbitrary simply because they differ with the legislature as to the propriety of the classification and the sufficiency of the reasons upon which it is based; for the lawmaking power is vested in the legislature. It must not be lightly assumed that legislators are less wise, or less mindful of the mandates of the constitution, than judges are. Therefore it is only in cases where it is manifest upon the face of a statute that a classification therein is based upon no reason, but is purely an arbitrary act, that courts may and must, for that reason, declare unconstitutional."

A number of other objections are urged. Many of them are disposed of in the Hunter case. They do not require specific mention.

With the appeal of the Clinton Falls Nursery Company and others the appeal of Louis J. Wesely, who owned a 40-acre tract, was argued. The same result follows in his appeal.

Orders reversed.