Argued September 11, affirmed October 16, 1957

SCHMIDT ET AL *v.* CITY OF CORNELIUS
316 P. 2d 511

*Mervin W. Brink,* of Hillsboro, argued the cause for appellants. With him on the brief were Schwenn & Brink, of Hillsboro.

*James R. Shick,* of Forest Grove, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and ROSSMAN, LUSK, BRAND, WARNER and KESTER, Justices.

BRAND, J.

Plaintiffs above named are the owners of contiguous tracts of land lying within the city of Cornelius. Acting in reliance upon the provisions of ORS 222.810 they brought this proceeding seeking to have the lands owned by them and described in the complaint excluded from the boundaries of the city. The defendant city demurred to the complaint. We find no order thereon on the judgment roll, but the printed abstract states that it was overruled. The case was put at issue by answers and reply, and after trial of the issues by the court, the "suit" was dismissed with prejudice. Plaintiffs appeal. The complaint alleges:

> "That the plaintiffs herein are the owners of contiguous tracts of land, lying within the corporate limits of the said City of Cornelius, which said tract of land contain more than twenty (20) acres, are not sub-divided into city lots and blocks, and are used principally for agricultural purposes, or are unimproved waste land; that the said land has not been improved with, and is not served by sidewalks, sewers, improved streets, or other municipal improvements, and does not receive any substantial benefit by being within the corporate limits of the City of Cornelius.

"That the said land is located on the border of the City of Cornelius, and if disconnected therefrom, will not result in the isolation of any part of the city from the remainder of the city.

"That the plaintiffs desire that the following described real property be disconnected from the City of Cornelius, Washington County, Oregon, for the reasons above set forth."

Then follows a legal description giving only the perimeter boundary of the land which plaintiffs seek to have taken out of the boundaries of the city. The prayer is "for a judgment, disconnecting the hereinabove described real property from the City of Cornelius * * *." By answer the corporate existence of the city is admitted. Then follows a general denial. The answer contains four separate defenses.

■ By the first affirmative defense it is alleged that the statute upon which plaintiffs rely is unconstitutional in that it contravenes the provisions of Oregon Constitution, Article XI, Section 2. This contention was amplified by the demurrer to the complaint wherein it was contended:

"* * * The act attempts the delegation of a nonexistent legislative authority in that it seeks to amend the Charter of the City of Cornelius of 1953 while the right and power to amend is vested solely in the legal voters of the City. The changing of the boundaries of a municipality is an amendment to its Charter and lies beyond the power of the legislature to accomplish either directly or indirectly. The Court has no inherent power to amend a City charter."

Defendant also alleges that all of the plaintiffs have separate ownerships of the property within the perimeter description and that each of said ownership is less than 20 acres in size within the corporate limits

of the city, with the exception of a tract owned by Gilbert E. Mooberry and Byron Mooberry. It appears to be admitted that the Mooberry tract exceeds 20 acres and that all of the other ownerships are less than 20 acres in size.

The statutes provide:

"The owner of any land consisting of one or more contiguous tracts lying in the corporate limits of any city having a population of 2,000 inhabitants or less, as determined by the latest official federal census or by an enumeration of the population of such city by the Secretary of State pursuant to ORS 221.730 and 221.740, whichever is the later, may have the same disconnected from the city under the provisions of ORS 222.810 to 222.830 if such area of land:

"(1) Contains 20 or more acres.

"(2) Is not subdivided into city lots and blocks and is used principally for agricultural purposes or is unimproved waste land.

"(3) Has not been improved with and is not served by sidewalks, sewers, improved streets or other municipal improvements, and does not receive any substantial benefit by reason of being within the corporate limits of the cities.

"(4) Is located on the border or boundary of the city; provided, however, that such disconnection shall not result in the isolation of any part of the city from the remainder of the city." ORS 222.810.

"The owner of any area of land described in ORS 222.810, if desirous of such disconnection, shall file a complaint in the circuit court of the county where the land or the greater part thereof is situated, in which complaint he shall allege facts in support of the disconnection. The particular city shall be made a defendant, and it, or any taxpayer resident in the municipality, may appear and defend the complaint. If the court finds that the allegations of the complaint are true and that the

area of land is entitled to disconnection under ORS 222.810, it shall order the land disconnected from the city. This order shall become effective when filed." ORS 222.820.

"Disconnection of any area of land by virtue of ORS 222.810 shall not exempt it from taxation for the purpose of paying any bonded indebtedness contracted prior to filing of the complaint, but the land shall be assessed and taxed for such purpose until such indebtedness is completely paid, as though not disconnected." ORS 222.830.

Assuming the constitutionality of the statutes, the question immediately arises whether any owner of less than 20 acres has a right to join with other like contiguous owners, adding their respective holdings, in order to comply with the 20-acre requirement. Under the clear wording of the statute we hold that no owner can invoke the statute unless the tract which he owns contains 20 or more acres. The Mooberry brothers did own a tract in excess of 20 acres and were entitled to seek relief under the statute if valid. No other plaintiff was so entitled. Whether two contiguous ownerships, each of which equals or exceeds 20 acres in size, have such a common interest as to permit the owners to join in one proceeding, is not before us and need not be decided. Nor is it necessary for us to decide whether the statute contemplates the bringing of an action at law or a suit in equity for the desired relief. The statute fails to specify whether this special proceeding is to be deemed one in law or in equity. The plaintiffs asked for a judgment, but the trial court treated the case as one in equity and entered a decree. There is no bill of exceptions. We have before us only the two issues above mentioned, i.e., the constitutionality of the statute and the question as to the qualifications of the parties plaintiff to seek relief. Even if the pro-

ceeding be considered one at law, these questions would be before us without a bill of exceptions.

Treating the Mooberrys as sole plaintiffs, we turn to the constitutional question. Until now, no case involving the right of an owner to "disconnect" from a city has reached this court, or, so far as we know, any circuit court of this state. The constitutional provisions with which we are concerned are the following:

> "No ex-post facto law, or law impairing the obligation of contracts shall ever be passed, nor shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution; provided, that laws locating the Capitol of the State, locating County Seats, and submitting town, and corporate acts, and other local, and Special laws may take effect, or not, upon a vote of the electors interested." Constitution of Oregon, Article I, § 21.

> "* * * The initiative and referendum powers reserved to the people by this Constitution, are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation, of every character, in or for their respective municipalities and districts. The manner of exercising said powers shall be prescribed by general laws, except that cities and towns may provide for the manner of exercising the initiative and referendum powers as to their municipal legislation. * * *" Constitution of Oregon, Article IV, § 1a.

> "Corporations may be formed under general laws, but shall not be created by the Legislative Assembly by special laws. The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon, and the ex-

clusive power to license, regulate, control, or to suppress or prohibit, the sale of intoxicating liquors therein is vested in such municipality; but such municipality shall within its limits be subject to the provisions of the local option law of the State of Oregon. * * *" Constitution of Oregon, Article XI, § 2.

For the purposes of this case it is of particular importance that the constitutional provisions and especially Article IV § 1a, and Article XI, § 2 be read and construed together. *Spence v. Watson,* 182 Or at 237, 186 P2d 785; *State ex rel North Bend,* 171 Or 329, 337, 137 P2d 607; *Burton v. Gibbons,* 148 Or 370, 374, 36 P2d 786; *Rose v. Port of Portland,* 82 Or 541, 548, 162 P 498; *State v. Port of Astoria,* 79 Or 1, 10, 154 P 399. The problem before us is peculiar to the state of Oregon by reason of the unique provisions of our constitution concerning home rule of cities. We have been cited to many cases from other jurisdictions and have given to them serious consideration, but they must in each instance be considered with caution because of the difference in the fundamental law of the various states.

■ The statute purports to give the right to be disconnected from a city only to one whose land is within the boundary of a city of 2,000 inhabitants or less. The first question presented by the briefs is whether this classification of the rights of land owners on the basis of municipal population is arbitrary and capricious and therefore invalid. As said in *Thompson v. Dickson,* 202 Or 394, 403, 275 P2d 749:

"A legislative classification based upon population has been repeatedly upheld by this court, and at this date it is too late to contend that such a classification is per se unconstitutional * * *" Citing cases. And see *Southern Pacific Co. v. Consolidated Freightways, Inc.,* 203 Or 657 at 664, 281 P2d 693.

However, the power to classify cities for the purpose of general legislation is subject to limitations. In *Foeller v. Housing Authority of Portland,* 198 Or 205, 256 P2d 752, we said at 259, "Classification of cities upon the basis of their population is not improper if their difference in size has a reasonable bearing upon their needs and the conditions to which a legislator should give heed." Citing cases. The rule is affirmatively stated in *Thompson v. Dickson,* supra. Quoting with approval from *Ladd v. Holmes,* 40 Or 167, 66 P 714, the court said:

" '* * * when objects and places become the subject of legislative action, and it is sought to include some and exclude others, the inquiry should be whether the distinctive characteristics upon which it is proposed to found different treatment are such as in the nature of things will denote in some reasonable degree of practical and real basis for discrimination.' "

In discussing the propriety of legislative classification on the basis of population, the Supreme Court of New Jersey said:

"* * * The test of invalidity we think was expressed by Justice Garrison in Mortland v. Christian, 52 N.J. Law, 521, 537, 20 A. 673, 674, when he said that 'the controlling question in each case is whether the provisions of the act are such as are germane to population. * * * If the provisions of the act are such that they would be equally appropriate to the other counties of the state, then the classification adopted is illusory, not real, and the legislation is special.' * * *" *Raymond v. Township Council of Teaneck,* 14 NJM 495, 186 A 62.

See also *State ex rel. Fatzer v. Redevelopment Authority of Kansas City,* 176 Kan 145, 269 P2d 484.

Under the authorities cited the questions are

whether, in resorting to classification, the legislature was seeking to accomplish a legitimate public purpose and whether there was "in some reasonable degree" a practical and real basis for this legislation which purports to grant to a land owner the right to have his property disconnected from a city having a population of 2,000 or less but which gives no such right to another in exactly the same circumstances except that his property is within a city of more than 2,000 population.

■ Another problem as to the validity of the classification relates to the provision of ORS 222.810 which accords to a landowner otherwise qualified, the right to disconnection if his 20 acres is "used principally for agricultural purposes." Must the court determine plaintiffs' rights on a percentage basis and find at least a 51 per cent agricultural use as against a possible 49 per cent residential or other use before ordering the disconnection? See *Forsyth v. Village of Cookville,* 356 Ill 289, 190 NE 421, where a similar but not identical statute was held unconstitutional. We have had great difficulty in finding any valid distinction which would justify the classifications found in the Oregon statute, but are confronted by the established rule that the burden is upon the party challenging the constitutionality of a law based upon classification of subject matter "to show beyond a reasonable doubt that the classification adopted is arbitrary and unreasonable and without any rational relationship to the end sought to be achieved." *Thompson v. Dickson,* supra. We also recognize that in classifying subjects for legislative treatment the courts will not question the legislative judgment unless they can say that the legislature "could not have had any reasonable grounds for believing that there were public considerations justifying the distinction made by the law." *Thompson*

*v. Dickson,* supra. Perhaps we have not probed to a sufficient depth the profundities of the legislative mind. We prefer therefore to base our decision on other considerations.

The defendant asserts that the statute attempts to provide a method of amending city charters, which method invades the prerogatives of local self-government reserved to the cities by the constitution.

■■ We first observe that the fixing of municipal boundaries is generally considered to be a legislative and not a judicial function. McQuillin, Municipal Corporations, 3d Ed, Vol 2, § 7.03, p 456. Assuming that the classification of cities by population is in this case valid, we find that the plaintiffs Mooberry must rely upon a tripartite procedure in asserting the right to have their land disconnected from the city. The three stages are as follows: (1) A statute, general in form, which purports to give rights to any owner whose land lies in any city having a population not exceeding 2,000, if his land qualifies under the four subparagraphs of ORS 222.810; (2) a right given to any such landowner at his election to bring or refrain from bringing an action for the disconnection of his land from the city; (3) an imperative duty of a court, on proof of the qualifying facts, to enter a judgment disconnecting the land from the city. Plaintiffs make the too broad assertion that "The power to amend city charters is vested in the legislature, qualified only by the provisions of Art XI, § 2 of the Oregon Constitution prohibiting enactment of special legislation for a particular town, village or city." They cite *Southern Pacific Co. v. Consolidated Freightways,* 203 Or 657, 281 P2d 693. In that case the general proposition is stated as follows:

"A general law applicable to all municipalities

of the same class repeals by implication all municipal charter and ordinance provisions in conflict therewith." *Southern Pacific Co. v. Consolidated Freightways, Inc.,* 203 Or 657, Headnote 1.

Of course, in the absence of constitutional limitation, state or federal, the legislature may enact any law, general or special. *Marr v. Fisher,* 182 Or 383, 187 P2d 966. As to the power of an Oregon legislature to enact laws amending city charters, we are concerned with the provisions of Oregon Constitution, Article I, § 20 (class legislation); Article III, § 1 (separation of powers); and with Article I, § 21; Article IV, § 1a, and Article XI, § 2, set forth supra.

We shall not review the conflict in the rulings of this court prior to decision of *Rose v. Port of Portland,* supra, and *Lovejoy v. Portland,* 95 Or 459, 188 P 207. Those decisions established the rule that the legislature may enact general laws concerning cities and towns, even to the extent of amending charters.

We will now take notice of the nature of the general laws affecting cities, which laws have been upheld. The cases fall into several groups. Typical of one group is *Southern Pacific v. Consolidated Freightways, Inc.,* supra, 203 Or 657, 281 P2d 693. Here the legislature by a general law prohibited the exercise of specified powers by cities of a certain class. And see, *City of Coos Bay v. Eagles Lodge,* 179 Or 83, 170 P2d 389. In these cases there is no intervening action between the legislative enactment and the effective limitation on the powers of the city under charter or ordinance.

Another group of cases involves general legislation directly investing cities with extramural powers which they could not otherwise exercise. (See *State v. Port of Astoria,* supra, re extramural authority.) Within

this group are *Spence v. Watson,* supra, 182 Or at 233, 186 P2d 785; *Churchill v. Grants Pass,* 70 Or 283, 141 P 164; *City of McMinnville v. Howenstine,* 56 Or 451, 109 P 81, and many others. Here the power is vested in a city and may be exercised by it simply by action of the city authorities. Other cases concerned general statutes not so clearly involving extramural powers but directly investing cities with specific powers, the exercise of which depends solely upon official action by the city without any intervening amendment of its charter by the voters of the city. *Burton v. Gibbons,* supra.

We will next consider cases in which legislative enactment, general in form, does not itself alter the powers of a city, but which establishes procedure by which some other official, tribunal or person is authorized to act and whose act, if taken, affects the powers of the city. These cases are unlike the ones previously discussed in that the authorized action is not by the city but some other person or body.

■■ This brings us to the disconnection cases. It is of course clear that a change in the boundaries of a city is an exercise of legislative power and amounts to an amendment of the city charter. 2 McQuillin, Municipal Corporations, § 7.03, p 258; *Cooke v. Portland,* 69 Or 572, 578, 139 P 1095. It is also to be remembered that although the enlargement of the city boundaries involves extramural power, the cities of Oregon, under Constitution Article IV, § 1a, and Article XI, § 2, may exercise their home rule powers and *exclude* territory previously included within their limits. *Flavel Land Co. v. Leinenweber,* 81 Or 353, 158 P 945. Thus the voters of a city have the identical power which the plaintiffs Mooberry are seeking to invoke in the pending case.

From McQuillin's Municipal Corporations we quote the general rule, as follows:

"Although power vested in the legislature with respect to municipal boundaries may not be delegated, the legislature may, within its constitutional power, submit the determination of the question of change of boundaries to local tribunals, such as courts, or to the city council, or other corporate authorities, or to the qualified electors. Generally, statutes so providing are sustained. Such laws define the conditions upon which territory may be annexed and direct the court or tribunal empowered to act to grant the relief on finding the necessary facts or, when the prescribed conditions exist, submit the final determination to the electors interested." 2 McQuillin, Municipal Corporations, § 7.12, p 284.

■ It is obvious that statutes or constitutional provisions which authorize the city council, or other corporate authorities, or the qualified electors of a city, to detach property, are in a class by themselves. Such statutes are in aid of the home rule powers of cities, not in derogation of such powers. See *Flavel Land Co. v. Leinenweber,* supra. Statutes of some states authorize a different type of procedure for the detachment of property from a city. The statutory procedure is instituted by the filing of a petition by a landowner seeking disconnection of his property from the city. The city is made a defendant, and upon proof of the required facts, the court is required to enter judgment of disconnection. Plaintiff relies upon *Punke v. Village of Elliott,* 364 Ill 604, 5 NE2d 389. The Illinois statute was similar to ORS 222.810, supra. Plaintiff filed his petition for disconnection and the court held that the statute placed a mandatory duty upon the court to disconnect the land if the conditions prescribed by

statute were shown to exist. The statute was challenged as an unconstitutional delegation of legislative power to the courts, but it was held that since no discretion was given to the court, there was no delegation of legislative power. The statute was also upheld as against the charge that it constitutes local or special legislation. Other similar cases are cited in an annotation appearing in 117 ALR 267. And see, 2 McQuillin, Municipal Corporations, 3d Ed, § 7.26, p 331. All of these cases, however, must be considered in the light of the peculiar provisions of the Oregon Constitution.

Before applying those provisions to the facts of this case we will consider certain significant questions which have been raised in other states.

In *Hastings v. Hansen,* 44 Neb 704, 63 NW 34, the court said:

"* * * it has been doubted if the legislature can pass a valid act giving the courts jurisdiction to disconnect by decree any part of the territory of a municipal corporation of the state merely at the suit of the owner thereof. * * *"

In *City of Hutchinson v. Leimbach,* 68 Kan 37, 74 P 598, the question at issue was whether plaintiff's land, which was previously within the boundaries of the city, had been legally disconnected therefrom. The statutory procedure called for the filing of a petition with the district court, followed by a hearing, and

"if upon the hearing of such testimony the court is satisfied that due notice has been given as required by this act, and that no public or private right will be injured or endangered, it shall order * * * such corporate boundaries to be changed by the exclusion of such lands therefrom, by an order entered upon the journal of such proceedings. * * *"

The court said:

"* * * The precise question here involved therefore seems not to have been considered in any of the cases cited. It is this: Is it competent for the Legislature to authorize an individual to effect a change in the boundaries of a city, provided that after publishing notice of his intention to do so he can induce a jury in the district court to find that no public or private right will be endangered, the loss of taxes to the city and of security to its bond-holders being excluded from consideration? In the cases arising under the statutes authorizing the mayor and council to change the city boundaries subject to conditions to be determined by the court the doubtful question was whether a legislative power was thereby conferred up the court, since it was authorized to pass upon the expediency of the proposed measure. But here there is no such question. Under the statute now involved the court has no discretion; it examines but one question—whether the proposed change would injure or endanger public or private rights—leaving out of consideration any possible right of the city or its bond-holders to look to the property affected for taxes; and if this is answered in the negative it must register the will of the petitioner, just as the council is in express terms required to record it by ordinance. The legislative power is not devolved upon the court, but upon the individuals seeking the change.

"* * * Under the provisions of the act, the will that the corporate boundaries shall be changed proceeds, not from the Legislature nor from the council, but from the signers of the petition, who are under no official responsibility, and of whom no other qualification is required than that they desire the change. These provisions are therefore void."

It would appear on principle at least that those seeking disconnection by judicial procedure are con-

fronted by a dilemma. If the statute gives discretionary power to the court to determine the expediency of the disconnection, it is invalid as a delegation of legislative power to a court. If the court has a mandatory nondiscretionary duty on proof of the required facts, then "the will that the corporate boundaries shall be changed proceeds, not from the Legislature nor from the council, but from the signers of the petition * * *." *Hutchinson v. Leimbach,* supra.

In *State ex rel. Jackson v. School District No. 2,* 140 Kan 171, 34 P2d 102, the issue related to the constitutionality of an act of the legislature which provided that a property owner in any school district of designated size and character should have the right to file a petition with the county school superintendent to withdraw from the district. The court first indicated that the act was in form general but was in fact a special law "burlesqued" as a general one. The court then pointed out that upon the filing of a petition the statute purported to detach the land from the district. The detachment was not by act of the superintendent. The court said:

"Every annexation of land to or exclusion of land from the corporate limits of a municipal or quasi municipal organization is to that extent a reorganization, and it is not debatable that the Legislature is powerless to clothe private individual or a group of private individuals with power over corporate organization. An attempt to confer such power is said to be an attempt to delegate legislative power, which is futile. * * *"

A case relating to the making of public improvements in a municipality rests upon similar reasoning. A statute provided that upon the filing of a petition by property owners representing a majority of the front-

age on a highway, specifying the kind, character and extent of a proposed improvement, the Board of Supervisors were required to make the improvement. The court said:

"Another ground urged against the validity of this law is that it constitutes an unlawful delegation of legislative power. We have carefully considered this contention, and see no escape from the logic of appellants' argument. It is, of course, well settled that the function of deciding all matters relative to public improvements such as are contemplated by the act in question are legislative in their character, and it is equally well settled that the legislative assembly to whom is delegated by the people all the legislative power of the state may, in local matters of an administrative character, delegate such legislative function to local authorities and boards; but it is also equally well settled that such power cannot be delegated to private individuals, or to any class of citizens in their individual capacity. * * *" *Morton v. Holes,* 17 ND 154, 115 NW 256.

We have cited these cases for the reasoning found in them, and freely acknowledge that there are other decisions which support *Punke v. Village of Elliott,* supra. Among them are: *In re Hunter,* 104 Minn 378, 116 NW 922 (1908); *Young v. Carey,* 184 Ill 613, 56 NE 960 (1900); *Tribett v. Village of Marcellus,* 294 Mich 607, 293 NW 872 (1940). In *Enderson v. Hildenbrand,* 52 ND 533, 204 NW 356 (1925) some of the cases which we have cited were distinguished, and the court on full consideration upheld a disconnection statute as against the claim that it constituted a delegation of legislative power to private individuals. It was said that the "only thing delegated to petitioner is the right to petition" which is a constitutional right. It was said that it is competent for the legislature to

pass a law, the ultimate operation of which may by its own terms be made to depend on a contingency. In that case the contingency was the decision of a landowner at his option to file a petition for disconnection. The difficulty which we find in this reasoning is that the granting of the petition was by statute made mandatory upon proof of the required facts. Thus the voluntary act of the landowner was not merely an exercise of the right of petition but was in fact the thing which necessarily resulted in the disconnection. We think the fallacy of this reasoning is exposed in the concurring opinion of Chief Justice Hughes in *Carter v. Carter Coal Co.,* which we will now consider.

In Considering the bearing of constitutional limitations upon the validity of the disconnection statute, we may well take our text from *Carter v. Carter Coal Co.,* 298 US 238, 80 L Ed 1160. In that case the validity of the Bituminous Coal Conservation Act was in issue. The statute, in effect, delegated to the producers of more than two-thirds of the annual tonnage production of coal the power to fix maximum hours of labor and to bind the minority to compliance. The court said:

"The power conferred upon the majority is, in effect, the power to regulate the affairs of an unwilling minority. This is legislative delegation in its most obnoxious form; for it is not even delegation to an official or an official body, presumptively disinterested, but to private persons whose interests may be and often are adverse to the interests of others in the same business. * * *"

In a specially concurring opinion Chief Justice Hughes said:

"I also agree that subdivision (g) of Part III of the prescribed Code is invalid upon three counts: (1) It attempts a broad delegation of legislative power to fix hours and wages without standards

or limitation. The Government invokes the analogy of legislation which becomes effective on the happening of a specified event, and says that in this case the event is the agreement of a certain proportion of producers and employees, whereupon the other producers and employees become subject to legal obligations accordingly. I think that the argument is unsound and is pressed to the point where the principle would be entirely destroyed. It would remove all restrictions upon the delegation of legislative power, as the making of laws could thus be referred to any designated officials or private persons whose orders or agreements would be treated as 'events,' with the result that they would be invested with the force of law having penal sanctions. (2) The provision permits a group of producers and employees, according to their own views of expediency, to make rules as to hours and wages for other producers and employees who were not parties to the agreement. Such a provision, apart from the mere question of the delegation of legislative power, is not in accord with the requirement of due process of law which under the Fifth Amendment dominates the regulations which Congress may impose. (3) The provision goes beyond any proper measure of protection of interstate commerce and attempts a broad regulation of industry with the State."

In the recent case of *General Electric Company v. Wahle,* 207 Or 302, 296 P2d 635, this court held that the Fair Trade Act by permitting a trademark owner to fix prices by a contract with others so as to bind non-signers of the contract was an unconstitutional delegation of legislative power. The court relied upon *Van Winkle v. Fred Meyer, Inc.,* 151 Or 455, 460, 463, 49 P2d 1140, and *La Forge v. Ellis,* 175 Or 545, 154 P2d 844. These three cases establish the basic principle which is here involved. In a specially concurring

opinion in the General Electric case Mr. Justice Lusk said:

"It, therefore, appears that the Oregon Fair Trade Act has attempted to vest in a distributor in combination with one or more retailers the authority to fix the resale price of certain commodities. The fact that the commodities are identified by a trade-mark, brand, or the name of the owner or distributor, is irrelevant to the present question. It is none the less price fixing, determined not by the legislature itself, nor by a board or commission acting under legislative authority, but by private individuals. Such a provision is as fully obnoxious to the Oregon Constitution (Art I, § 21; Art III, § 1; Art IV, § 1) as the law establishing minimum prices for barber services which we struck down in La Forge v. Ellis, 175 Or 545, 174 P2d 844, and the law authorizing private individuals to fix the price of agricultural products held unconstitutional in Van Winkle v. Fred Meyer, Inc., 151 Or 455, 49 P2d 1140."

In *Van Winkle v. Fred Meyer,* supra, the price-fixing statute followed a procedure somewhat similar to that of the present "disconnection" statute. The requisite steps were (1) a general statute, (2) action by a majority of individuals, and (3) approval by the governor, based on findings of fact. In holding the act unconstitutional, we said:

"* * * This leaves wholly to persons outside of the legislature the power to determine whether there shall be a law at all and, if there is to be a law, what the terms of that law shall be. It is impossible to conceive of a more complete delegation of legislative power * * *." 151 Or at 463.

In the case at bar the delegation is in a more obnoxious form than in the cases cited. The power to bring into effective life the dormant statute is not

delegated to a majority of private citizens but on the contrary is vested in any single private citizen who may invoke the act or not at his option. There is a difference, but not a valid distinction, between (1) the cases supra in which a group of private persons may invoke a statute general in form and thereby bind other private persons, and (2) a disconnection statute whereby a single private individual may invoke a statute general in form and thereby amend the charter of a city.

We have already seen that cities of Oregon are empowered by vote of the electorate to amend their charters by excluding territory. *Flavel Land Co. v. Leinenweber,* supra, and we have also held that the authority of a city to legislate relative to matters germane to purely municipal affairs "has been derived not from the legislature but from the constitution itself." *City of Portland v. Welch,* 154 Or 286, 59 P2d 228. Clearly, exclusion of territory from a city by act of the city is an exercise of municipal legislation under the decision of the case last cited.

We now construe Constitution Article XI, § 2, and Article IV, § 1a, together, as required by cases cited supra. Article XI, § 2 provides that the legislature shall not enact, amend, or repeal any charter for any city or town, and the legal voters are granted power to enact and amend their charters subject to the Constitution and criminal laws of the state. Article IV, § 1a in one respect goes beyond Article XI, § 2. It declares that the initiative and referendum powers are reserved to the legal voters of every municipality as to all local, special and municipal legislation of every character, and that cities and towns may provide for the manner of exercising such powers as to their municipal legislation.

In the classic opinion of Justice HARRIS in *Rose v. Port of Portland,* supra, that distinguished jurist thought it important to point out that the ballot title for Article XI, § 2 as prepared by sponsors of the measure and as printed on the ballot was as follows: " 'Constitutional amendment giving cities and towns exclusive power to enact and amend their charters.' " 82 Or 541 at 562. The ultimate question for decision is this: The legislature is powerless to enact a special law amending the charter of the city of Cornelius. Can it prescribe procedure whereby that power is vested solely in any private individual whose land qualifies under the statute and who may or may not exercise the power at his option? The question was answered by Chief Justice Hughes in the Carter case, supra, and has been answered by this court in *City of Portland v. Welch,* supra. The latter case involved the constitutionality of the Tax Supervising and Conservation Commission Act which provided that the decisions made by the Commission as to the amount of the tax which could be levied by each municipal corporation should be conclusive upon the levying boards and officers thereof. The validity of the act had been upheld in *Tichner v. City of Portland,* 101 Or 294, 200 P 466. Thereafter the city again challenged the constitutionality of the act as being in violation of Article XI, § 2 of the Oregon Constitution. The issue was reconsidered. This court said:

"Does this act as applied to cities within Multnomah county deprive the people of such municipalities of the right of local self government as guaranteed to them under the Home Rule Amendment to the constitution (Article XI, § 2)? The object and purpose of such constitutional provision is to prevent legislative interference and intermeddling with purely municipal affairs. * * *"

Again we quote:

> "* * * Pursuant to these Home Rule Amendments the legal voters of the City of Portland adopted their charter. Hence, we conclude that the authority of the city to legislate relative to matters germane to purely municipal affairs has been derived not from the legislature but from the constitution itself. If that is a sound conclusion, can it be true that the legislature, under the guise of a general law, can interfere with the exercise of such right? We take it to be fundamental that the legislature could not do so through the enactment of a special law. Hence, what the legislature can not do directly it can not do through indirection."

The court took pains to quote with approval from *Burton v. Gibbons,* 148 Or 370, 36 P2d 786, that

> " 'the power of the legislature to enact a general law applicable alike to all cities is paramount and supreme over any conflicting charter provision or ordinance of any municipality, city or town'."

But the court qualified certain language which may be found in that case, by saying:

> "While a general law supersedes a municipal charter or ordinance in conflict therewith, it should be borne in mind that the subject matter of the general legislative enactment must pertain to those things of general concern to the people of the state. A law general in form can not, under the constitution, deprive cities of the right to legislate on purely local affairs germane to the purposes for which the city was incorporated."

We said of this doctrine, which was also announced in *Pearce v. Roseburg,* 77 Or 195, 150 P 855:

> "* * * It is as wholesome today as it was 20 years ago when it was first declared as it undoubtedly is in keeping with the purpose and object of the Home Rule Amendments. Such interpreta-

tion perpetuates local self-government, yet does not disturb the sovereignty of the state."

We now adhere to the general rule as stated in *In re Boalt*, 123 Or 1, 260 P 1004:

"It is in consonance with our whole scheme of government that the legislature or the people of the whole state may enact a general law governing the exercise of municipal authority in matters not strictly local or municipal, but pertaining in part to the general welfare of the state, or the exercise of sovereign authority."

Whether the legislature may ever by a general law operate directly upon all city charters in matters which concern alone the inhabitants of the respective cities and which relate to purely local affairs germane to the purposes for which the city was incorporated need not be again decided here. We merely take note of the apparent conflict between the dictum in *Burton v. Gibbons* (148 Or at 381) and the clear statement supra from *City of Portland v. Welch*.

It is sufficient for the disposal of the pending question to hold that since the legislature could not pass a special law amending the charter of the city of Cornelius and excluding territory from its boundaries, "Hence, what the legislature can not do directly it can not do through indirection." *City of Portland v. Welch*, 154 Or at 295. We hold that the legislature could not, by an act general in form, effect an amendment to the charter of the city of Cornelius by empowering a private individual at his sole option to initiate a judicial proceeding which upon proof of specified facts would result in mandatory action by the court amending the city charter and excluding plaintiffs' territory from the city. To hold otherwise would be to deprive the city of its admitted power to change its own

boundaries by its own procedure, and would in practical effect violate the mandate of Constitution Article I, § 21 which provides that no law shall be passed "the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution; * * *." Whatever may be the merit of cases like *Punke v. Village of Elliott,* supra, which arose in other states and were decided under other constitutional provisions, we must reject them as authority in this jurisdiction. To follow them would be to emasculate the Home Rule Provisions of our Constitution.

The decree of the trial court is affirmed.