## HICKORY LANE LAND & DEVELOPMENT COMPANY
## *v.* VILLAGE OF NOVI.

1. MUNICIPAL CORPORATIONS—DISCONNECTION OF AGRICULTURAL LAND —STATUTES.

   The purpose of statute permitting the disconnection from border of a city or village of parcel of land of 10 or more acres that has been used exclusively for agricultural purposes for the past 3 years preceding filing of petitions and so located that disconnection will not result in isolation of any other part of the city or village is to avoid injustice by subjecting such lands to participation in the expense of maintaining various municipal services not beneficial to it (CLS 1956, § 123.31 *et seq.*).

2. SAME—DISCONNECTION OF AGRICULTURAL LAND—OWNERSHIP.

   Parcels of land of upwards of 10 acres at border of village which had actually been used exclusively for agricultural purposes for the past 3 years preceding the filing of petitions are ordered disconnected on petition of owners, where it does not leave a part of the village isolated from the balance thereof even though ownership was in a corporation and an estate which did not farm the land themselves and corporation had not even been organized for the purpose of conducting a farm business, since such owners nonetheless were proper parties to present petitions for disconnection (CLS 1956, § 123-.31 *et seq.*).

3. SAME—DISCONNECTION OF AGRICULTURAL LAND—OWNERSHIP.

   Judicial inquiry under statute authorizing disconnection of agricultural land from border of city or village is focused upon the use of the land without regard to its record ownership excepting

---

REFERENCES FOR POINTS IN HEADNOTES
[1–5] 37 Am Jur, Municipal Corporations §§ 35–38.
[6] 14 Am Jur, Costs § 91.

only as such fact may have a bearing upon the actual use of the land (CLS 1956, § 123.31 *et seq.*).

4. SAME—DISCONNECTION OF AGRICULTURAL LAND—EVIDENCE OF USAGE—LAND DEVELOPER—FEDERAL SOIL BANK PROGRAM.

Evidence presented by plaintiffs in proceedings to disconnect land at border of village *held*, to make a prima facie showing that the land had been actually devoted to agricultural uses to the extent it was feasible to do so following death of former owner who had used it all for a unitary farm operation, notwithstanding an aborted effort to sell a part of the land to a land developer and the placing of some of the tillable land in the Federal soil bank program, hence, dismissal of petitions at conclusion of plaintiffs' proofs was error (CLS 1956, § 123-.31 *et seq.*).

5. SAME—DISCONNECTION OF AGRICULTURAL LAND—CONSOLIDATION OF ACTIONS.

Petitions for disconnection of 2 parcels of agricultural land from village, located at its border, which presented common questions of law and fact are now authorized to be consolidated into 1 action (GCR 1963, 505.1).

6. COSTS—CONSTRUCTION OF STATUTES—PUBLIC QUESTIONS—DISCONNECTION OF AGRICULTURAL LAND.

No costs are allowed in consolidated proceedings to disconnect 2 parcels of agricultural land from border of village, where questions of statutory construction involving issues of public importance are presented for determination (CLS 1956, § 123-.31 *et seq.*).

Appeal from Oakland; Beer (William John), J. Submitted November 7, 1963. (Calendar Nos. 66, 67, Docket Nos. 49,884, 49,885.) Decided January 6, 1964.

Petition by Hickory Lane Land & Development Company, a Michigan corporation, against the Village of Novi, an incorporated village, to detach certain properties therefrom. Similar action by same corporate plaintiff and Frank E. Kenney, executor of the estate of Georgia M. Mitchell, deceased. Cases consolidated for trial. Petitions dismissed.

Plaintiffs appeal. Reversed and remanded for new trial.

*Pevos & Pevos* (*Daniel N. Pevos*, of counsel), for plaintiffs.

SOURIS, J. In July of 1961 plaintiffs filed 2 petitions for the disconnection of land from the village of Novi pursuant to the provisions of PA 1949, No 123 (CLS 1956, § 123.31 *et seq.* [Stat Ann 1958 Rev § 5.3561 *et seq.*]). The 2 cases were consolidated for trial over the plaintiffs' objections and were tried in April of 1962. At the conclusion of the plaintiffs' proofs, before defendant offered any evidence of its own, the trial court dismissed the petitions on defendant's motion, on the grounds that plaintiffs were not proper parties to invoke the benefits of the cited act and that the lands sought to be disconnected had not in fact been used exclusively for agricultural purposes during the 3-year period preceding filing of the petitions as is required by the act. In their appeal plaintiffs challenge both bases for the trial court's dismissal of their actions, claim that the trial court erred in ordering consolidation of the 2 actions, and claim that failure of the trial court to conduct a pretrial conference in 1 of the 2 actions was an error requiring remand for pretrial conference and new trial thereof.

PA 1949, No 123, provides for the disconnection of farm land lying within the corporate limits of any city or village from such city or village provided that the land sought to be disconnected contains 10 or more acres, is not subdivided, is located on the municipal border or boundary so that disconnection thereof shall not result in the isolation of any other part of the city or village and shall have been used only for agricultural purposes for the 3 years next

preceding filing of the petition for disconnection. Section 1 of Act No 123. Section 2 of the act provides that if the court finds compliance with the requirements of section 1, "the court shall order said land disconnected from such city or village" unless it would be inequitable to grant disconnection because of the existence of city or village owned sewers, sidewalks, highways, water mains, gas mains, or other public improvements upon or abutting such property. That section concludes with the statement that only in that event may the court in its discretion deny the petition even though petitioner has met the requirements of section 1.

In *Tribbett* v. *Village of Marcellus,* 294 Mich 607, in upholding the constitutionality of a similar prior act (PA 1939, No 177) this Court quoted (pp 617, 618) from the opinion of the supreme court of Minnesota in *Hunter* v. *City of Tracy,* 104 Minn 378, 382 (116 NW 922), in which a comparable Minnesota statute was held to be constitutional and in the process of decision the purposes of which were described thusly:

"The retention of large tracts of rural or agricultural lands within the territorial limits of cities, which are not needed for municipal purposes, and which receive no benefit from being within the city limits, and which are subjected thereby to increased taxation simply for the benefit of the municipality, is an injustice. The statute in question was intended to afford a remedy in such cases. It is manifest that rural lands used exclusively for agricultural purposes do not sustain the same relation to the municipality as do unplatted lands which are used for manufacturing or mining or other similar purposes; for lands of the latter class may, and usually do, derive a benefit from the municipality in many ways, such as the benefit of police protection, water, lights, and sewerage, while those of the latter [former *sic?*] class do not."

We also quoted, in *Tribbett, supra,* 620, from *Punke* v. *Village of Elliott,* 364 Ill 604, 611, 612 (5 NE2d 389), where, in upholding the Illinois disconnection statute, its supreme court said:

"The legislature has determined that an evil exists in compelling owners of tracts of 20 acres or more, not subdivided and which border a city or village, to pay taxes for urban benefits. It is obvious that unsubdivided tracts of this size do not possess any characteristics of city or village property. They receive no practical benefits from being within the limits of such municipality and contributing, by paying taxes, to the expense of the maintenance and administration of such local governmental agency. It is true that tracts of less than 20 acres may likewise receive no benefits for the local taxes paid, but that is a criticism addressed against the legislative wisdom rather than a constitutional defect."

There is every reason to believe that Michigan's legislature sought to accomplish by Act No 123 the same purposes determined to be the purposes of the Minnesota and Illinois statutes considered by the supreme courts of those States in the *Hunter* and *Punke* cases referred to above.

Plaintiff Frank E. Kenney is the executor of the estate of Georgia Mitchell. The estate and plaintiff corporation own separate portions of 1 of the parcels of land sought to be disconnected and the corporation alone owns the second parcel of land sought to be disconnected. The 2 parcels of land are separated by about 80 acres of land owned by the corporation which are not included in this litigation (apparently in order to prevent isolation from the village of a part of the village not owned by plaintiffs). All of the land to which reference has been made was used by Mrs. Mitchell and her husband, before his death in 1956, exclusively for beef and dairy farming purposes. Just before he died he

organized plaintiff corporation to which he transferred the major portion of his farm lands, but continued to farm the entire land as he had in the past. His widow likewise continued full scale farming operations in 1957 after Mr. Mitchell's death, treating all of the land as her own, notwithstanding the fact that title to most of it had been conveyed to the corporation, substantially all of the stock of which she owned as the survivor of her husband.

Sometime in 1957 and in March of 1958 all of the cattle and substantially all of the equipment used in the farming operation were sold. The only activity on the land in 1958 was the cutting and sale of hay grown on the property. In 1959 the land which remained in Mrs. Mitchell's name and subsequently passed to her estate, was placed in the Federal soil bank program where it remained at least until the time of trial in 1962. Part of the balance of the land which was in the plaintiff corporation's name was woodland or otherwise not suitable for cultivation although it previously had been used for grazing purposes. In 1959 and 1960 various parts of the corporation's lands were leased to individuals who farmed it. The corporation had granted an option to purchase its lands to a land developer and had entered into a land contract with that developer covering 80 of the acres involved in this litigation. Before completion of the contract and before any subdivision was commenced upon the 80 acres, the developer surrendered the contract and its option to purchase.

In view of the purposes of the legislation as we have indicated them above, there seems to be no reason to distinguish between corporate and individual owners of lands used for agricultural purposes, nor can we read the statute to distinguish between resident farmers farming their own land and

absentee landlords of farm lands used only for agricultural purposes. Consequently, we conclude that there was no basis for denying the plaintiffs the relief they request, if otherwise their lands qualify under the provisions of the statute, on the ground that the corporate owner, as it is claimed, was not organized for the purpose of conducting a farm business and neither the corporate nor the estate owner did in fact farm the land themselves. Judicial inquiry under this statute, by its very provisions, must be focused upon the use to which the land has been put without regard to its record ownership excepting only as such fact may have a bearing upon the actual use of the land.

The remaining issue which was in dispute in the trial court was the use to which the lands involved were put during the years 1958, 1959, and 1960, the 3 years preceding the filing of these petitions. The defendant village claimed that grant to a subdivider of an option to purchase part of the land and subsequent execution of a land contract covering part of the optioned land, demonstrates that the land was not used exclusively for agricultural purposes. The city also contended that placing part of the unoptioned land in the federal soil bank program was not the use of such land for agricultural purposes.

There is no question that hay was harvested from the land by plaintiffs in 1958 and that large areas of the land were farmed in 1959 and 1960 by the plaintiffs' tenants under yearly leases. Plaintiffs' proofs clearly establish the fact that all of the lands involved in this litigation had been used by the Mitchells for a unitary farm operation and that the disruption therein resulted from Mr. Mitchell's death. Under the circumstances disclosed, the plaintiffs have continued to devote the land to agricultural uses to the extent it was practically feasible for them to do so. Their aborted effort to sell the land does

not affect the fact that it was actually used only for farming during the life of the option to purchase nor does placing some of the tillable land in the Federal soil bank program alter the fact that the land, considered as a unitary whole, was devoted to no other purpose than agricultural.

Plaintiffs, at the conclusion of their proofs, had established their prima facie right to the relief provided by the statute and, therefore, the trial court erred in dismissal of their petitions at that stage in the proceedings. Accordingly, the order of dismissal must be vacated and a new trial ordered. On remand for new trial, it should be noted that GCR 1963, 505.1 now authorizes consolidation of actions such as these, thereby obviating repetition of 1 of the objections plaintiffs voiced to the proceedings reviewed. We suggest that before new trial commences a pretrial conference pursuant to GCR 1963, 301 be conducted covering the issues presented by the consolidated petitions.

Reversed and remanded for new trial. No costs, questions of statutory construction involving issues of public importance being involved.

KAVANAGH, C. J., and DETHMERS, KELLY, BLACK, SMITH, AND O'HARA, JJ., concurred.

ADAMS, J., took no part in the decision of this case.